## *In re* C. H. WILSON.

### June 3, 1884.

| 32 | 145 |
|----|-----|
| 39 | 385 |
| 32 | 145 |
| 41 | 143 |
| 32 | 145 |
| 43 | 251 |
| 43 | 313 |
| 32 | 145 |
| 64 | 379 |
| 32 | 145 |
| 82 | 258 |

Cities—Power of Council to restrict Sale of Liquor to certain Parts of the City.—The city council of Minneapolis has power to make reasonable regulations as to where, or within what parts of the city, the business of vending, dealing in, or disposing of spirituous, vinous, fermented, or malt liquors may be carried on.

Same—Power, how to be Exercised—Not to be Delegated.—This is a legislative power, which they must exercise themselves by ordinance passed in the manner prescribed by the city charter. They cannot delegate this power to the mayor.

Same—Certiorari.—A mere *legislative* act of a municipal corporation cannot be reviewed on *certiorari.*

Petition for a writ of *certiorari* to the mayor, city clerk and city council of Minneapolis, to review the ordinance and proceedings by which it was attempted to establish "patrol districts," outside of which no licenses to sell liquor should be granted, and under color whereof the petitioner's application for a license was denied. The case is stated in the opinion.

*Gordon E. Cole, E. M. Wilson,* and *P. M. Babcock,* for petitioner.

*Judson N. Cross* and *Frank H. Carleton,* for respondent.

MITCHELL, J. Section 5, chapter 4, of the charter of the city of Minneapolis, (Sp. Laws 1881, p. 434,) provides: "The city council shall have full power and authority to make, ordain, publish, enforce, alter, amend, or repeal all such ordinances for the government and good order of the city, for the suppression of vice and intemperance, and for the prevention of crime, as it shall deem expedient; and in and by the same to declare and impose penalties and punishments, and enforce the same against any person or persons who may violate the provisions of any ordinance passed and ordained by it; and all such ordinances are hereby declared to be and to have the force of law: *provided,* that they be not repugnant to the laws of the United States, or of this state. And for these purposes the said city council shall have authority by such ordinances—*First,* to license and regu-

v.32—10

late," (among others,) "all persons vending, dealing in, or disposing of spirituous, vinous, fermented, or malt liquors."

The mode in which these powers are to be exercised is specified as follows in sections 8 and 9 of the same chapter: "The style of all ordinances shall be, 'The city council of the city of Minneapolis do ordain.' The subject of every ordinance shall be expressed in its title, and no ordinance shall embrace more than one subject." Id. p. 439, § 8.

"Section 9. All ordinances and resolutions of the city council shall be passed by an affirmative vote of a majority of all the members of the council by ayes and nays, which shall be entered on the records of the council. No ordinance shall be passed at the same meeting of the council at which it shall have been presented, except by unanimous consent of all the members present, which shall be noted in the record. * * When approved, they shall be recorded by the city clerk in books provided for that purpose; and, before they shall be in force, they shall be published in the official paper of the city." Id. pp. 439–440.

Section 1 of chapter 3 provides that "all ordinances and resolutions shall, before they take effect, be presented to the mayor, and, if he approve thereof, he shall sign the same." If he returns it with objections, the council may pass it by a two-thirds vote; and if he retains it five days, it shall have the same force and effect as if approved by him. Id. p. 424.

On the 28th of April, 1884, the city council passed "An ordinance to license and regulate all persons vending, dealing in, or disposing of spirituous, vinous, fermented, or malt liquors," section 1 of which reads: "No person shall sell, vend, deal in, or dispose of any spirituous, vinous, fermented, or malt liquors, or beverages, for any use or purpose whatever, in or at any building or other place within the limits of the city of Minneapolis, without first having obtained a license therefor in the manner herein provided." Section 2 reads: "No person shall be licensed to sell, vend, deal in, or dispose of any spirituous, vinous, fermented, or malt liquors or beverages, for any use or purpose whatever, in or at any building or other place within the limits of the city of Minneapolis, * * * who intends, if licensed, to

carry on his business, or who will, when licensed, carry on his business, outside of those districts in said city which shall hereafter be designated and known as 'active patrol districts,' to be designated as hereinafter required." Section 3 reads: "Any person desiring a license to sell, vend, deal in, or dispose of any spirituous, vinous, fermented, or malt liquors or beverages in said city of Minneapolis, shall make an affidavit and file the same with the city clerk of said city, in which affidavit said person shall state fully and explicitly * * * whether or not said room or rooms, where he intends to and will carry on his business, if licensed, is within those districts in said city which have been duly designated as 'active patrol districts' of said city." Section 9 reads: "The mayor of said city shall designate such portions of said city as he shall deem best, to be known and designated as 'active patrol districts,' and shall submit the same to the city council for its approval; and, when approved by said city council, the same shall be and become the districts of said city which shall be constantly patrolled by the police force of said city, under the instructions of said mayor. Said active patrol districts may be changed at any time by said mayor, by the like approval of said city council." The other provisions of the ordinance need not be here cited. After its passage and publication, the mayor, in pursuance of the provisions of section 9, designated certain portions of the city (embracing a district two or more miles in length, and of an average width of about half a mile, and including most of the business portion of the city) as "active patrol districts," and submitted the same to the council, which approved the same by resolution.

The petitioner, after setting out all these proceedings, alleges that he is a citizen of Minneapolis, engaged in the business of dealing in and selling spirituous, vinous, fermented, and malt liquors in said city; that, desiring to continue in such business, he applied to the city council for a license so to do, but was refused solely for the reason that his place of business is not situated within the limits of the "active patrol districts" designated by the mayor as aforesaid. He asks that a writ of *certiorari* issue to the mayor and city council, to bring up for review by this court their action in passing this ordinance, against the validity of which numerous objections are raised.

If a writ of *certiorari* would lie in such a case, and the validity of this ordinance were properly before us, there is one, and only one, objection here made to it, which, as at present advised, we would hold well taken

We have no doubt whatever of the power of the city council to determine where, and within what portions of the city, the business of selling and dealing in intoxicating liquors may be carried on. This right is implied and included in the power to *regulate*. And if they deem that the good order of the city requires that this traffic shall be excluded from the suburban and residence portions of the city, and confined to the more central and business portions, where it can be kept under more effectual police surveillance, their power to do so is, in our judgment, undoubted. Under a grant of police power to *regulate*, the right of the municipal authorities to determine where and within what limits a certain kind of business may be conducted, has been often sustained. For example, the place where markets might be held; where butchers' stalls or meat-shops may be kept; where hay or other produce shall be weighed; where auctions may be held; the limits within which certain kinds of animals shall not be kept; within which the business of tallow chandler shall not be carried on; within which gunpowder shall not be stored; within which slaughter-houses shall not be kept; the distance from a church within which liquor shall not be sold. Such cases might be multiplied almost indefinitely. If, under the general police power to regulate, this can be done as to such kinds of business, on what principle can it be claimed that similar regulations may not be adopted as to the sale of intoxicating liquors,—a traffic which all civilized communities deem necessary to place under special police regulations and restraints? Of course, such regulations must be reasonable, of which fact the courts must judge. But, in assuming the right to do so, courts will not look closely into mere matters of judgment, and set up their own judgment against that of the municipal authorities, when there is a reasonable ground for a difference of opinion.

But this power to regulate is vested in the city council. It is a power which they cannot delegate to any person or officer. It is a legislative act, which they must perform themselves, and they can only

exercise it by ordinance, enacted in the manner prescribed in the charter. Of course, they may impose mere executive or ministerial duties, such as approving the bond, receiving the license fee, and issuing the license, on certain officers, as they have done in the present case; these are mere executive and ministerial acts to be performed in the execution of the ordinance. But they cannot delegate their legislative powers. The ordinance, in that respect, must be complete when it leaves the hands of the city council. The limits within which the sale of liquor should be confined is a matter which the council must determine for themselves. It calls for the exercise of *legislative* discretion. They can no more remit to the mayor the right to determine this than they can the question of the amount of the license fee.

But this is, in effect, what they have done in this case. The ordinance nowhere defines the limits of the "license districts." It leaves this to be done by the mayor, under the name of "active patrol districts," which is but another name for license districts. The matter is somewhat obscured by calling them "active patrol districts." But when the ordinance is stripped of all disguises, the stubborn fact remains that it is the judgment and discretion of the mayor, and not of the council, which is to determine in what parts of the city this business may be carried on. The difficulty is not obviated by the fact that the action of the mayor is to be approved by the council. This may be done by a mere resolution, passed by a bare majority of a quorum, at the same meeting at which it is introduced; whereas the council can only legislate on this subject by ordinance, passed in the manner prescribed by section 9, chapter 4, of the charter already quoted. This ordinance carries with it the seeds of its own dissolution; for, under the last clause of section 9, the mayor might at any time, with the approval of a bare majority of a quorum of the council, extend the license district so as to include the whole city. In legislating upon this question, it is, of course, eminently proper that the council should take into account what parts of the city can conveniently be patrolled by the police; but, after all this, they must themselves exercise their legislative discretion in fixing the limits of the license districts.

We do not wish it to be inferred from anything we have said that

we hold that the city council can, in addition to a fine, impose costs. upon a party convicted of a violation of an ordinance, so that the total amount will exceed the maximum fine authorized by the charter.

Counsel were allowed, upon the argument, to discuss the validity of this ordinance at great length. Both sides were desirous that this question should be now passed upon, in view of its importance, and the serious public evils and embarrassments that might result from its being left in doubt. For these reasons we have expressed our views upon what may be termed the special distinguishing features. of this ordinance, although we have concluded that a writ of *certiorari* will not lie in this case. We will not, however, be disposed to follow our action in this case as a precedent. Originally, and in English practice, a *certiorari* was an original writ issuing out of the court of chancery or king's bench, directed to the judges or officers of an inferior *court*, commanding them to certify or return the records or proceedings in a cause before them, for the purpose of a judicial review of their action. In the United States, the office of this writ has. been extended, and its application is not now confined to the decisions of *courts*, properly so called, but it is also used to review the proceedings of special tribunals, commissioners, magistrates, and officers of municipal corporations exercising *judicial* powers, affecting the rights or property of the citizen, when they act in a summary way, or in a new course different from that of the common law.

The acts of municipal corporations, or rather of municipal officers,. are divided into legislative, ministerial, and judicial. Of course, municipal officers do not, strictly speaking, possess judicial powers; but they do possess certain powers, in the exercise of which they perform acts which, both from the nature of the acts themselves and their effect upon the rights or property of the citizen, bear a close analogy to the acts of courts, and are, therefore, termed "judicial," or "*quasi* judicial," to distinguish them from those that are merely ministerial or legislative. The authorities are almost uniform in holding that. mere legislative or ministerial acts, as such, of municipal officers cannot be reviewed on *certiorari;* that only those which are judicial or *quasi* judicial can be thus reviewed. The courts are not always agreed as to what acts are judicial. Some have gone a great length in holding.

certain acts judicial, which, on principle, it would be very difficult to place under that head. But in every case which we have found where a court has assumed the right to review the acts of municipal officers on *certiorari*, either the act itself was judicial in its nature, or else its validity was involved in judicial proceedings which were the subject of review. The following are instances of acts of municipal officers which have been held judicial, and hence directly subject to review on *certiorari:* Laying out a street or highway across private property, and assessing the owners' damages therefor; making special assessments against a man's property to pay for improving or paving a street; assessing damages for the destruction of buildings to prevent the spread of fire; determining contested election cases. All these bear more or less analogy to the judicial acts of courts, properly so called. But we doubt whether in any case it has ever been held that a purely legislative act, as such, can be reviewed on *certiorari*. Cases from New Jersey have been cited as going that far. The courts of that state have probably extended the application of this writ farther than those of any other state; but our attention has not been called to any case, even from that state, which goes as far as counsel claim.

The cases of *Camden* v. *Mulford*, 26 N. J. Law, 49, and *Carron* v. *Martin*, Id. 594, cited by petitioner, do not go to any such length. All that was decided in the first case was that an ordinance authorizing a new improvement to be made, such as opening and paving new streets, and constructing sewers, *by which the property of specific individuals may be directly taxed to defray the expense, was a judicial act*. In the second case it was merely held that the supreme court had a right to review on *certiorari* the proceedings of corporations that do acts affecting the rights and property of individuals, *which are judicial or quasi judicial* in their nature.

Dillon, Mun. Corp. § 926, is also cited as authority that courts will on *certiorari* examine the proceedings of municipal corporations, whether legislative or judicial. But that learned author does not say so. He is simply stating the rule that *certiorari* will lie to review the proceedings of such corporations. But that he did not intend to convey the idea that mere legislative or ministerial acts could be thus

reviewed is evident, for at least two reasons: *First,* not a single authority cited in support of the text sustains such a proposition. *Second,* the author immediately adds, by way of illustration: "Thus, if no appeal or other mode of review be given, and if there be no statute to the contrary, the legality of *convictions in municipal courts* will be reviewed on *certiorari.* So, under the same circumstances, and in the same way, the proceedings of municipal corporations in *opening streets,* in making *local assessments,* in *levying taxes,* in *contested election cases,* and the *like,* will be examined and reviewed, to ascertain whether they are regular and legal," all of which, it will be found from an examination of the cases cited, have been held to be judicial acts.

To hold that any mere legislative act of a municipal corporation could be thus directly reviewed on *certiorari* would not only be a radical departure from all precedent, but extremely onerous upon the courts, and vexatious to municipal officers. There is no more reason why the validity of a legislative act of a city council should be thus raised in advance of actual litigation between parties, involving the question, than there is in the case of an act of the legislature. That the ordinance under consideration is a legislative act needs no argument. The suggestion that it is judicial, because the city council must have exercised their discretion in passing it, is without force. Every legislative act calls for the exercise of discretion as to its expediency and propriety.

Writ denied.