CITY OF GREENCASTLE *v.* THOMPSON.

[No. 20,894.    Filed May 28, 1907.]

<div style="float:right">168    493<br>169    193</div>

1. MUNICIPAL CORPORATIONS.—*Ordinances.—Intoxicating Liquors. —Exclusion from Residence Districts.*—A city ordinance, defining the residence portion of the city, under §3541 Burns 1901, Acts 1895, p. 180, rendered *prima facie* unlawful the sale of liquors in such district; but whether such district was really a residence district was a question of fact in each case.    p. 500.

2. INTOXICATING LIQUORS.—*Legislative Powers.*—The legislature, except where restricted by the Constitution, has the exclusive control over the sales of intoxicating liquors.    p. 501.

3. SAME.—*Municipal Corporations.—Delegation of Power to.*—In the absence of constitutional inhibition, the legislature may delegate to municipal corporations the power to control, regulate and prohibit the liquor traffic.    p. 502.

4. MUNICIPAL CORPORATIONS. — *Intoxicating Liquors. — General Delegation of Power to Regulate.*—Under a general power to municipalities to regulate the liquor traffic, they may exclude such traffic from residence districts.    p. 502.

5. SAME.—*Ordinances Defining Residence Districts.—Intoxicating Liquors.*—The act of 1905 (Acts 1905, p. 219, §53, §3477 Burns 1905), giving to municipal corporations the power to define the residence and business districts of a city in reference to the sales of liquors, makes an ordinance defining such districts conclusive upon the courts.    p. 503.

6. PLEADING. — *Answer. — Intoxicating Liquors.—Residence Districts.—Municipal Corporations.*—Where defendant was prosecuted for the sale of liquors in a residence district, as ordained by the city council, an answer that his saloon was in the business district and not within the residence district, is insufficient, where it also concedes that the saloon was within the prohibited territory.    p. 503.

7. MUNICIPAL CORPORATIONS.—*Defining Residence Districts.— Discretion.—Intoxicating Liquors.*—Under §3477 Burns 1905, Acts 1905, p. 219, §53, cities have a very wide discretion in defining the boundaries of the business and residence districts of a city, as relates to the liquor traffic.    p. 504.

8. SAME.—*Police Power.—Discretion.—Judicial Inquiries.—Intoxicating Liquors.*—Ordinances districting cities into residence and business districts, as respects the liquor traffic, are in the

exercise of the police power; and they are subject to judicial inquiry only to determine whether they are impartial and reasonable. p. 505.

9. MUNICIPAL CORPORATIONS.—*Business Districts.*—*Intoxicating Liquors.*—An ordinance of the city of Greencastle defining the business district thereof, in respect to the liquor traffic, as bounded by the streets lying one square north, west, south, and two squares east of the public square, is reasonable and valid. p. 505.

From Clay Circuit Court; *John H. James,* Special Judge.

Prosecution by the City of Greencastle against John W. Thompson. From a judgment for defendant, plaintiff appeals. *Reversed.*

*B. F. Corwin* and *Charles T. Peck,* for appellant.

*C. C. Matson, William Watson Woollen, Evans Woollen* and *Russell T. Byers,* for appellee.

MONTGOMERY, J.—This action was brought by appellant to recover a penalty for the violation of an ordinance. A trial before the mayor resulted in a judgment for appellant. An appeal was taken to the Putnam Circuit Court, and the venue changed to the court below. Appellee answered in three paragraphs and appellant's demurrer upon the ground of insufficient facts was sustained to the third, and overruled as to the second paragraph of answer. Appellant replied in denial to the second paragraph of answer, and a trial upon an agreed statement of facts resulted in a finding and judgment in favor of appellee. Appellant's motion for a new trial upon statutory grounds was overruled.

It is charged that the court erred in overruling appellant's demurrer to the second paragraph of answer, and in overruling its motion for a new trial.

The complaint averred that on June 13, 1905, the common council of the city of Greencastle duly passed and adopted an ordinance, which is hereinafter set out, and caused the same to be published for two successive weeks

as provided by law, and that afterwards, to wit, on July 15, 1905, appellee made a certain sale of intoxicating liquor upon particularly described premises within said city to be drunk upon the premises where sold, which premises were not within the business portion of said city as defined and fixed by said ordinance, but within the residence or suburban district, where such sales of liquor were prohibited, in violation of sections one and two of said ordinance.

The second paragraph of appellee's answer was as follows: "For a second and further answer to the plaintiff's complaint herein the defendant says that he admits that on July 15, 1905, he did maintain and keep a room for the sale of spirituous, vinous, malt, and other intoxicating liquors to be used in and upon the premises where sold, and that he did on said day sell to Clarence Williams, at and for the price of twenty cents, certain intoxicating liquors, to wit, four pints of beer to be used in and upon said premises, and this defendant also admits that said room so occupied and used by this defendant was and is within the limits of the city of Greencastle, Indiana, and within the territory defined by said ordinance as the residence and suburban portions of said city; but this defendant says that said place where said room was so kept and maintained by this defendant, as aforesaid, was, on July 15, 1905, at and within a business portion of said city of Greencastle, Indiana, and was not within a residence or suburban portion of said city. Wherefore the defendant says that he is not guilty as charged in said complaint and he asks judgment for his costs."

Upon the trial it was admitted that the ordinance upon which the suit was founded was duly passed and established by the common council of the city on June 13, 1905, and that after its passage it was duly published for two consecutive weeks, June 23 and 30, 1905. The ordinance was thereupon introduced in evidence, and is as follows:

. "City Ordinance.

An ordinance defining the business and residence portions of the city of Greencastle, Indiana, providing where intoxicating liquors may not be sold or kept for sale to be used in and upon the premises, and providing penalties.

Section 1. Be it ordained by the common council of the city of Greencastle, Indiana, that the business portions of said city of Greencastle, Indiana, are hereby defined to be and declared to exist only within that territory included in the following boundaries, to wit: All that part of said city of Greencastle which is bounded on the north by Columbia street of said city; on the west by Market street; on the south by Walnut street; and on the east by College avenue. All the residue of the territory of said city and all territory within two miles of the corporate limits of said city is hereby declared to be residence or suburban portions of said city and territory and the sale of or keeping of intoxicating liquors for sale, to be used in and upon the premises, is hereby prohibited within said residence or suburban portion of said city and from all territory within two miles of the corporate limits of said city and confined to said business portion of said city under the penalties hereinafter prescribed.

Section 2. And be it further ordained by the common council of the said city of Greencastle, Indiana, that it shall be and is hereby made unlawful for any person or persons or corporation to barter, sell or give away any spirituous, vinous, malt or other intoxicating liquors to be used in and upon the premises where sold at any point or place within the suburban or residence portions of said city of Greencastle, Indiana, and all territory within two miles of the corporate limits of said city as defined in the first section of this ordinance, but the sale, bartering or giving away of intoxicating liquors to be used in and upon the premises is hereby confined to said business portions of said city as herein defined in the first section of this ordinance, and any person or persons violating any of the provisions of this section or any other section of this ordinance shall, on conviction of such offense before

the mayor of said city, be fined in any sum not less than $10 nor more than $100 for each offense, and no license from Putnam county, Indiana, or city of Greencastle, to sell intoxicating liquors, shall constitute a defense to any action founded on this ordinance.

Section 3. And be it further ordained by the common council of the city of Greencastle, Indiana, that it shall be and is hereby unlawful for any person or persons or corporations to keep or maintain any place, shop, room or building for the sale, bartering or giving away or the keeping of any spirituous, vinous, malt or other intoxicating liquors to be used in and upon the premises where sold, bartered or given away at any point or place within said suburban or residence portions of said city of Greencastle, Indiana, and all territory within two miles of the corporate limits of said city, as defined in the first section of this ordinance, but the keeping or maintaining of all such places is hereby confined to said business portions of said city as herein defined in the first section of this ordinance, and any person violating any of the provisions of this section or any other section of this ordinance shall, on conviction of such offense before the mayor of said city, be fined in any sum not less than $10 nor more than $100 for each such offense, and no license from Putnam county, Indiana, or said city of Greencastle, Indiana, to sell intoxicating liquors, shall constitute a defense to any action founded on this ordinance.

Section 4. And be it further ordained by the common council of the city of Greencastle, Indiana, that it shall be and it is hereby made unlawful for any person or persons or corporation to barter, sell or give away or to keep or maintain any place, room or structure for the keeping, selling or giving away of any spirituous, vinous, malt or intoxicating liquors to be used in and upon the premises where sold at any point or place within the suburban portions of the city of Greencastle, Indiana, and all territory within two miles of the corporate limits of said city as herein defined in the first section of this ordinance, but all such sales, bartering or giving away of intoxicating

liquors and the keeping and maintaining of all places for the sale, giving or bartering away of intoxicating liquors to be used in and upon the premises is hereby confined to the business portions of the city of Greencastle, Indiana, as defined in the first section of this ordinance, and any person violating any of the provisions of this section or of any other section of this ordinance shall, on conviction of such offense before the mayor of said city, be fined in any sum not less than $10 nor more than $100, and no license from Putnam county, Indiana, or the city of Greencastle, Indiana, to sell intoxicating liquors, shall constitute any defense to any action founded on this ordinance.

Section 5. This ordinance shall be in force and take effect from and after its passage and publication, and it shall not be construed or have the effect to repeal or modify any other ordinance or part of ordinance heretofore ordained by said council."

It was further admitted that appellee maintained a saloon in the city of Greencastle, July 15, 1905, and that he made a sale of a pint of beer to Clarence Williams to be used on the premises, and that his saloon where the sale was made, was the same premises described in the complaint, and that said saloon was situated on the west side of Jackson street in the city of Greencastle, about five blocks north of the public square and four blocks north of the territory defined in the ordinance as the business portion of the city; that the territory between the appellee's saloon and the public square is largely built up of residences; that the saloon was about three hundred feet south of the north corporate line of the city; that for a distance of three or four hundred yards north of the north corporate line of the city there are scattering residences; that north of the saloon there was a restaurant, railway tracks and one residence; that on the east side of Jackson street there was a planing-mill, some railroad tracks and a building used for a restaurant and family residence; that on the west side of Jackson street, south of the saloon, there was a poultry house and residence, and on the east side of Jack-

son street, and south of the saloon, there was a livery and sale stable and a residence, all within a distance of about four hundred feet of the saloon where the sale was made; that to the east of the appellee's saloon there was a depot for the storage of oils and a beer depot; that west of the saloon were the stations of the Monon and Big Four railways, two hotels and five residences; that the nearest residence to the saloon was about three hundred feet away; that these were the only buildings in the immediate vicinity of appellee's saloon. It was also admitted that the territory defined in the ordinance is the principal business part of the city, including the public square and court-house, and that the territory between said principal business portion of the city and the appellee's saloon was almost exclusively occupied with residences; that Columbia street is the north line of the business portion of the city, as defined in the ordinance, and that the appellee's saloon was 1,560 feet north of Columbia street, which last-named street is one block north of the public square. The ordinance and admitted facts herein set out were all of the evidence introduced at the trial.

The authority to enact the ordinance in question is found in clause 40, §53, of an act concerning municipal corporations (Acts 1905, p. 219, §3477 Burns 1905), which reads as follows:

"The common council of every city shall have power to enact ordinances for the following purposes: * * * Fortieth. To license, *tax,* regulate and restrain all shops, inns, taverns, or other places where intoxicating liquors are kept for sale, to be used in and upon the premises; and, in regulating, restraining and licensing such inns, taverns, shops or places aforesaid, [they] *such common council* shall have the power to designate the room, building or structure where such liquors may be sold, and may exclude such sales from the suburban or residence [portion] *part* of such city, and confine the places where such sales may

be made to the business [portion] *part* of such city, *and may define such suburban or residence and business parts of any such city;* and may direct the arrangement and construction of the doors, windows and openings of the particular room in such building where such sales may be had, or such intoxicating liquors be drunk, and may direct the location, arrangement and construction of the bar kept therein, and the interior arrangement and construction of such room, and may direct what games may be carried on therein, and may forbid the keeping or use of wine-rooms. *The charge for any such license shall be any sum not exceeding $250 for any one year. For the purposes of this clause jurisdiction is given cities of the first and second classes for four miles from their corporate limits, and to all other cities, for two miles beyond their corporate limits."* This provision in the present city charter is an amendment of the act of 1895 (Acts 1895, p. 180, §3541 Burns 1901). The words omitted from the former act are embraced in brackets, and the parts added are italicised in the foregoing quotation.

Under the act of 1895, *supra,* an ordinance prohibiting in general terms the sale of intoxicating liquors to be used upon the premises in the residence portion of the city of Muncie was upheld by this court as valid. *Shea* v. *City of Muncie* (1897), 148 Ind. 14. In the case of *Rowland* v. *City of Greencastle* (1902), 157 Ind. 591, an ordinance enacted pursuant to the same statute, defining the residence portions of the city, and prohibiting therein sales of intoxicating liquors to be drank upon the premises, was declared to be valid. The right to define and fix the boundaries of the residence and business districts was not specifically conferred upon the city by the act of 1895, *supra.* In the case last cited this court properly held that the ordinance defining the limits of the business and residence portions of the city under the power granted rendered *prima facie* unlawful the maintenance of

all places kept for the sale of intoxicating liquors to be used upon the premises, outside of the business portion of the city, as defined by such ordinance, but that the boundaries of the business district so fixed were not conclusive. Cities under the former act were only empowered to exclude retail saloons from their residence and suburban portions, and whether a particular place was within the business portion, or the residence or suburban portion, was a question of fact to be determined in each particular case. All the powers upon this subject previously granted to cities were confirmed by the statute of 1905, *supra,* with the additional authority to "define such suburban or residence and business parts of any such city." The only question for decision, therefore, is, to what extent, under existing charters, the boundaries, defined and fixed by ordinance, to the business and residence or suburban parts of the city, are conclusive.

The second paragraph of appellee's answer would doubtless have been proper and sufficient under the former statute, but the query is whether such a showing is sufficient to permit a defendant to contradict the ordinance under the amended law.

It is well settled that the several states, in the exercise of their sovereign power, have full authority, except as restricted by constitutional provisions, to enact any 2. measures deemed expedient to suppress intemperance and minimize the evils resulting from the traffic in intoxicating liquors, whether by prohibiting or by restricting and licensing the manufacture and sale of such liquors. In the absence of legislation, the business of selling intoxicating liquors has universally been recognized as lawful, but there is no inherent right in the people to engage in such traffic, in any such sense as to remove it from the sphere of legislative control. Statutes have been held valid prohibiting the sale, exchange or giving away of intoxicating liquors in houses of ill fame, dance halls or

other places where women or minors are employed, within a specified distance of orphans' or soldiers' homes, a church, school, college or other institution of learning, a polling place, or fair ground while a fair is in progress. 23 Cyc. Law and Proc., 82, note 80.

In the absence of constitutional inhibitions, it is competent for the legislature of a state to delegate to municipal corporations power to control and

3. regulate the liquor traffic within prescribed territory.

The right to exclude the traffic from residence portions of a city has been held to be included in a general power to regulate the business. The supreme court of

4. Minnesota said: "We have no doubt whatever of the power of the city council to determine where, and within what portions of the city, the business of selling and dealing in intoxicating liquors may be carried on. This right is implied and included in the power to regulate. And if they deem that the good order of the city requires that this traffic shall be excluded from the suburban and residence portions of the city, and confined to the more central and business portions, where it can be kept under more effectual police surveillance, their power to do so is, in our judgment, undoubted." *In re Wilson* (1884), 32 Minn. 145, 148, 19 N. W. 723. See, also, *Strauss* v. *City of Galesburg* (1903), 203 Ill. 234, 67 N. E. 836; *Mayor, etc.,* v. *Shattuck* (1893), 19 Colo. 104, 34 Pac. 947, 41 Am. St. 208.

In the case of *Swift* v. *People, ex rel.* (1896), 63 Ill. App. 453, the mayor arbitrarily refused to issue a license for a saloon to be located in a residence district, and the court held that there was no absolute right to keep saloons in any and all quarters of the city, and refused to require the mayor to issue the license demanded.

As already seen, the statute under consideration expressly empowered appellant to define the business and

residence or suburban parts of the municipality, and to exclude places where intoxicating liquors are kept for sale to be used upon the premises from such residence or suburban parts, and to confine such places to the business part of the city. The power to control the liquor traffic being primarily lodged wholly in the legislature, it was its right and manifest purpose in passing the amended act to take the determination of the true boundary line between the business and residence portions of the city from the domain of the judiciary, and make it a legislative question. Conceding that a delegated authority must be strictly construed, it is a well-settled principle that when the adoption of a municipal ordinance is expressly authorized by the legislature, and the power so granted is not in conflict with a constitutional prohibition, it cannot be successfully assailed as unreasonable in a judicial tribunal. *Miller* v. *Town of Syracuse* (1907), *ante*, 230; *Beiling* v. *City of Evansville* (1896), 144 Ind. 644, 35 L. R. A. 272; *Rund* v. *Town of Fowler* (1895), 142 Ind. 214; *Skaggs* v. *City of Martinsville* (1895), 140 Ind. 476, 33 L. R. A. 781, 49 Am. St. 209; *Steffy* v. *Town of Monroe City* (1893), 135 Ind. 466, 41 Am. St. 436; *Coal Float* v. *City of Jeffersonville* (1887), 112 Ind. 15.

In speaking of the exercise of such delegated power, Judge Dillon said: "Much must necessarily be left to the discretion of the municipal authorities, and their acts will not be judicially interfered with unless they are manifestly unreasonable and oppressive, or unwarrantably invade private rights, or clearly transcend the powers granted to them." 1 Dillon, Mun. Corp. (4th ed.), §379.

Appellee's second paragraph of answer did not attempt to set up any facts showing that, in defining the business and residence parts of the city, appellant had abused its power, but concedes that a sale of liquor was made at a place within the prohibited territory and rests its sufficiency upon the bald assertion that such place

was in the business district and not within the residence or suburban part of the city. We are clear in our opinion that the ordinance cannot be thus contradicted, and that the answer is insufficient.

Conceding that appellee had a right to show that the ordinance was unreasonable and oppressive, the facts are insufficient to sustain the judgment. All the facts 7. upon which the decision rested have been set out, from which it appears that the business district, as defined by the ordinance, embraced the principal business interests of the city; that the place where the sale of liquor in question was made is 300 feet south of the corporation line, five blocks north of the public square, and 1,560 feet from the north line of the defined business district, and the intervening space is almost wholly occupied by residences, and that one or more residences stand within 300 or 400 feet of the place in any direction.

In the case of *People, ex rel.,* v. *Cregier* (1891), 138 Ill. 401, 415, 28 N. E. 812, the supreme court of Illinois very pertinently said: "Nor is it important, so far as this question is concerned, that other premises similarly situated, and within a short distance of those upon which the relator desires to keep a dram-shop, are not included within the prohibited districts. Such state of facts will almost necessarily result from any attempt to establish partial prohibition within the limits of any particular municipal corporation. If prohibited districts are created at all, their boundaries must be established somewhere, and it may well be that the situation of premises on one side of the line may not differ essentially from that of those on the other. To a great extent the precise location of the boundary lines must be left to the arbitrary discretion of the municipal authorities."

The power granted to cities to define and prescribe fire limits is quite similar in many respects to that under consideration. In discussing that subject, in the case of

*Baumgartner* v. *Hasly* (1885), 100 Ind. 575, 581, 50 Am. Rep. 830, this court said: "There is little, if any, conflict in the decisions upon the question of the validity of ordinances passed under express legislative authority fixing limits within which wooden buildings shall not be erected. The conflict among the cases is upon the question whether the municipal corporation possesses the power to enact such ordinances without express legislative authority." And in the course of the opinion in that case the court quoted from *North Chicago City R. Co.* v. *Town of Lake View* (1883), 105 Ill. 207, 44 Am. Rep. 788, the following paragraph: "But in doubtful cases, where a thing may or may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions, under a general delegation of power like the one we are considering, their action, under such circumstances, would be conclusive of the question."

These ordinances are passed in the exercise of the police power, which is an attribute of sovereignty, founded upon the duty of the State to protect its citizens and provide for the safety and good order of society. It is not necessary that the police power be delegated in express words to a city, since by its organization pursuant to law the State imparts the powers necessary to the performance of its functions. In the exercise of this power a very large discretion is necessarily lodged in the legislative department, but the courts may inquire into the character of police regulations, and determine whether they are impartial, reasonable, and consistent with the Constitution and state policy.

The ordinance in question was enacted in pursuance of express authority, and nothing is made to appear, either upon the pleadings or by the evidence, from which we can say that the municipality abused the power and discretion with which it is invested. No pri-

Hoy *v.* State, *ex rel.*—168 Ind. 506.

vate right is unreasonably invaded, or constitutional guaranty abridged. The ordinance is valid, and the finding of the court is not sustained by the evidence.

The judgment is reversed, with directions to sustain appellant's motion for a new trial and its demurrer to the second paragraph of answer, and for further proceedings not inconsistent with this opinion.