**DEAD LAKE ASSOCIATION, INC., Appellant,**

v.

**OTTER TAIL COUNTY, Minnesota, Respondent,**

**R. Murray Partnership, LLP, Respondent.**

No. A03–750.

Supreme Court of Minnesota.

April 28, 2005.

Gerald W. VonKorff, Rinke–Noonan, St. Cloud, MN, for appellant.

Byron E. Starns, Leonard, Street and Deinard, Minneapolis, MN, Robert L. Russell, Fergus Falls, MN, Peder A. Larson, Edina, MN, for respondent R. Murray Partnership.

Michael T. Rengel, Pemberton, Sorlie, Rufer & Kershner, PLLP, Fergus Falls, MN, for respondent Otter Tail County.

John H. Erickson, Erickson, Pearson & Aanes, Brainerd, MN, for amicus curiae Minnesota Lakes Association.

## OPINION

MEYER, Justice.

This is an appeal from a decision by respondent Otter Tail County (the County) to grant a conditional use permit (CUP) for a planned unit development (PUD) on Dead Lake in Otter Tail County. Dead Lake Association (the Association), a group of landowners opposed to the development, challenged the County's grant of the CUP, arguing that the County lacked authority to grant the permit because the shoreland at issue was not properly zoned for a PUD. In addition, it argued that the CUP was arbitrarily granted by the County. The court of appeals affirmed in part and reversed in part. *Dead Lake Ass'n, Inc. v. Otter Tail County,* No. A03–750, 2004 WL 422570, at *4 (Minn.App. Mar.9, 2004). It concluded that the County had authority to approve the CUP but that the County acted arbitrarily for lack of findings. *Id.* It remanded the matter to the county board to make findings in support of its decision. *Id.*

The Association petitioned this court for review, asserting that the County lacked authority to approve the CUP because it failed to follow a planning process outlined in state regulations, which requires the County to "legislatively create a planned unit development zoning district in which PUD is 'an allowable conditional use.'" We granted review on that single issue.[1]

Respondents Otter Tail County and R. Murray Partnership (the Developer) claim that the appellate courts lack jurisdiction over this issue because the Association's argument is an attack on the validity of the County's zoning ordinance and such an

---

1. None of the parties appeal from the court of appeals' remand to the county board for de- tailed findings to support the grant of the CUP.

attack is not reviewable by writ of certiorari.[2] We agree and vacate the court of appeals' determination that the County had authority to approve the CUP.

On November 20, 2002, the Developer submitted an application for a CUP for construction of a cluster development or PUD on Dead Lake in Otter Tail County.[3] Dead Lake is a 7,900–acre lake classified by the Department of Natural Resources as a "natural environment lake."[4] The proposed development consisted of 151 residential housing units, a general store, a restaurant, two swimming pools, a marina, and mooring facilities.

The Otter Tail County Planning Commission (the Planning Commission) stayed the permit application so that an Environmental Assessment Worksheet (EAW)[5] could be completed, as required by Minn. R. 4410.1400 (2003). The Developer submitted its EAW to the Planning Commission, which approved the EAW on January 21, 2003. The Planning Commission submitted notice of the forthcoming EAW to the Environmental Quality Board and public comment was solicited. At the close of the public comment period, concerned parties were allowed to present additional information and comment at two public meetings conducted by the Planning Commission.

After the public hearings, the Planning Commission concluded that a detailed Environmental Impact Statement (EIS)[6] was unnecessary based on its findings that the Developer had amended the project proposal to mitigate environmental impacts, that the revised proposal fell below the maximum density limitations prescribed by the County's Shoreland Management Ordinance (the Ordinance), and that the County could mitigate environmental effects through its regulatory authority. The Otter Tail County Board of Commissioners (the County Board) then issued a negative declaration concerning the need for an EIS.[7]

2. Respondent Otter Tail County in its brief asserts that "[t]he Court of Appeals, in correctly finding that the Shoreland Management Ordinance of Otter Tail County complied with state standards, rendered an opinion on an issue not properly before it."

3. The shoreland along Dead Lake had been classified using the "Waters of Otter Tail County" classification system, which designated Dead Lake as a natural environment lake upon which a PUD was an allowable conditional use.

4. "Natural environment lakes are generally small, often shallow lakes with limited capacities for assimilating the impacts of development and recreational use. They often have adjacent lands with substantial constraints for development * * *. These lakes, particularly in rural areas, usually do not have much existing development or recreational use." Minn. R. 6120.3000, subp. 1a.A (2003).

5. An Environmental Assessment Worksheet is "a brief document which is designed to set out the basic facts necessary to determine whether an environmental impact statement is required for a proposed action." Minn. Stat. § 116D.04, subd. 1a(c) (2004).

6. An Environmental Impact Statement is an informational document that contains a thorough evaluation of the environmental effects of a proposed project, and must be prepared when an EAW has suggested that a project has the potential for significant environmental effects. See Minn.Stat. § 116D.04, subd. 2a (2004).

7. In a separate action, the Association appealed this negative declaration to district court. The County and Developer moved for summary judgment, which the district court granted. However, the court of appeals recently reversed the district court's grant of summary judgment to the County and the Developer and remanded to the County for preparation of an EIS. Dead Lake Ass'n, Inc. v. Otter Tail County, No. A04–717, —— N.W.2d ——, 2005 WL 221773 (Minn.App. Feb.1, 2005). The court of appeals also reversed the Minnesota Pollution Control Agency's decision to grant a permit for the development of a wastewater treatment system, determining

In mid-April 2003, the Planning Commission considered and approved the Developer's CUP application, subject to numerous conditions.[8] The County Board met the following week and approved the CUP with the conditions, for a maximum of 139 units and boat slips. The Association appealed the County Board's decision by writ of certiorari to the Minnesota Court of Appeals. The court of appeals found that the County Board had the authority to approve the CUP, because "[u]nder both the rules and the [ordinance], cluster developments are conditional uses on natural environment lakes. Therefore, at least with regard to this proposed development, the ordinance is not inconsistent with, and complies with, the standards set forth in the rules." *Dead Lake Ass'n,* 2004 WL 422570, at *3. However, the court of appeals concluded that the County Board had failed to properly establish a record of findings supporting its decision and remanded the matter to the County Board "to make a record indicating the basis for its decision." *Id.* at *4.

On appeal, the only issue before us concerns the County's authority to grant the CUP for the proposed cluster development. The Association claims that the County improperly granted the CUP without first zoning Blue Heron Bay as a land use district in which PUD is an allowable conditional use. It claims that such zoning is required by state regulation before a CUP may be issued.

In 1990, the Minnesota Legislature promulgated statutes relating to shoreland development to "provide guidance for the wise development of shorelands of public waters," "preserve the economic and natural environmental values of shorelands," and "provide for the wise use of water and related land resources of the state." Minn.Stat. § 103F.201 (2004). The legislature directed the Commissioner of the Department of Natural Resources (DNR) to adopt model standards and criteria for the use and development of shoreland. *See* Minn.Stat. § 103F.211 (2004). In addition, counties were required to adopt a shoreland conservation ordinance that meets the minimum standards set forth in section 103F.211. *See* Minn.Stat. § 103F.215, subd. 1 (2004). As mandated by the statutes and subsequent state regulations, the County created this Ordinance, revising it in 1992 and most recently in 2001.

According to state regulations, "[t]he development of shorelands of public waters *must* be controlled by means of land use zoning districts which are designated to be compatible with the classes of public waters." Minn. R. 6120.3100 (2003) (emphasis added). First, the DNR Commissioner is required to classify all public waters according to specified criteria.[9] The three classifications for lakes are natural environment lakes, recreational development lakes, and general development lakes. *See* Minn. R. 6120.3000, subp. 1a.A-C (2003).

---

that the grant was premature based on an inadequate environmental review. *Dead Lake Ass'n, Inc. v. Comm'r of Minnesota Pollution Control Agency,* No. A04–483, 2005 WL 287490, —— N.W.2d —— (Minn.App. Feb.8, 2005). The County and Developer have filed petitions for review in both cases.

8. The final proposal consisted of 139 residential units rather than the original 151. It also centralized docking at one marina, established a "no wake" zone and marked chan-

nels for boat traffic, and tabled plans for the commercial portions of the development.

9. The criteria are as follows: size and shape; amount and type of existing development; road and service center accessibility; existing natural characteristics of the waters and shorelands; state, regional, and local plans and management programs; existing land use restrictions; and presence of significant historic sites. Minn. R. 6120.3000, subp. 1 (2003).

Natural environment lakes are the most environmentally sensitive, and generally have "limited capacities for assimilating the impacts of development and recreational use." *Id.,* subp. 1a.A. Recreational development lakes are generally moderately developed with seasonal and year-round residences and associated recreational uses. *Id.,* subp. 1a.B. General development lakes are usually large and highly developed, and can generally withstand higher levels of additional development. *Id.,* subp. 1a.C.

Second, once the DNR Commissioner has classified all public waters, each county must create "land use zoning districts which are designated to be compatible with the classes of public waters." Minn. R. 6120.3100 (2003). The five types of land use zoning districts are: (1) special protection districts; (2) residential districts; (3) high density residential districts; (4) water-oriented commercial districts; and (5) general use districts. Minn. R. 6120.3200, subp. 3 (2003). The regulations include a chart identifying whether specific uses are permitted, conditional, or prohibited depending on the type of district and the class of public waters in question. *See id.,* subp. 4.

Minnesota Rule 6120.3800 addresses issues relating to PUDs. It provides that "[l]ocal governments must consider incorporating, with approval of the commissioner, provisions into shoreland management controls *to allow planned unit developments,*" which are consistent with the standards in the shoreland management regulations. Minn. R. 6120.3800, subp. 1 (2003). "If local governments allow planned unit developments, the land use districts in which they are an allowable conditional use must be identified in their official controls and on a zoning map." *Id.,* subp. 2. In addition, "[d]esignation of the districts *must* be based on consider-

ation of" certain specified criteria. *Id.* (emphasis added).

The Ordinance does not use the land use zoning districts described in the regulation. Rather, it provides that "[t]he classification for each area surrounding each public body of water is hereby established according to the document entitled 'Waters of Otter Tail County Classification,' which accompanies and is made a part of this Ordinance." Otter Tail County, Minn., Shoreland Management Ordinance § III.1 (2001). The "Waters of Otter Tail County" document is a list of the lake and river classes for Otter Tail County established by the DNR. Because the DNR classified Dead Lake as a natural environment lake, the Ordinance classifies the shoreland surrounding Dead Lake as a district that surrounds a natural environment lake. The Ordinance then lists specific uses and whether those uses are permitted, conditional, or prohibited based upon the class of lake or river. Cluster developments are conditional uses on natural environment lakes.

At the court of appeals, the Association argued that treating the shoreland of an entire lake as if it is open to cluster development is destructive of the planning process contemplated by state regulations. *Dead Lake Ass'n,* 2004 WL 422570 at *3. The court of appeals disagreed and concluded that the Ordinance "is not inconsistent with, and complies with, the standards set forth in the rules." *Id.* at *2.

The Association asks us to answer the following question: Did Otter Tail County violate Minnesota shoreland regulations by granting a CUP for mixed commercial and clustered residential development on a natural environmental lake, when the County had not created a zoning district authorizing such development? The Association claims that the court of appeals erred in concluding that the Ordinance complied

with state regulations, and consequently the Developer's application for a CUP must be barred because the property is not zoned for a PUD. The County and the Developer assert that this claim amounts to an attack on a county zoning decision, and because zoning decisions by municipalities and counties are legislative in nature, such decisions are not reviewable through writ of certiorari. Thus, the County and Developer contend that we do not have subject matter jurisdiction over this appeal and neither did the court of appeals. In the alternative, the County and the Developer contend that the Ordinance meets and exceeds the minimum standards required by DNR regulations and "has been repeatedly approved by the Minnesota DNR as being in compliance with those rules."

The jurisdictional issue is a threshold question and is fairly stated as follows: Does the court of appeals, on review by writ of certiorari of a county's grant of a CUP, have jurisdiction to decide whether the underlying county ordinance was valid and in compliance with state regulations? The court of appeals did not concern itself with this question because it was not argued by the parties. Nevertheless, lack of subject matter jurisdiction may be raised at any time by the parties or sua sponte by the court, and cannot be waived by the parties. *Marzitelli v. City of Little Canada*, 582 N.W.2d 904, 907 (Minn.1998) ("[I]t is blackletter law that subject matter jurisdiction may not be waived."); 1 David F. Herr & Roger S. Haydock, *Minnesota Practice—Civil Rules Ann.* § 12.17 (4th ed. 2002) ("Since subject matter jurisdiction is a fundamental question going to the very right of the court to adjudicate the dispute between the parties, it may not be conferred on the court by agreement of the parties nor by their waiver of the right to object.").

Decisions by local government bodies are generally legislative rather than judicial in nature, and are not subject to immediate appellate review. Instead, parties wishing to challenge these decisions must first litigate the question of their validity in district court. *In re Wilson*, 32 Minn. 145, 152, 19 N.W. 723, 727 (1884). However, some decisions by local government bodies are quasi-judicial in nature. Therefore, we have developed a body of case law treating the writ of certiorari as an extraordinary remedy that allows appellate review of these acts. *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414 (Minn.1981) ("[Certiorari] is issued by a court to review the proceedings of a tribunal exercising judicial or quasi-judicial functions."). We have explained that the rationale for this exception is the separation of powers principle. "Because it mandates nonintrusive and expedient judicial review, certiorari is compatible with the maintenance of fundamental separation of power principles, and thus is a particularly appropriate method of limiting and coordinating judicial review of the quasi-judicial decisions of executive bodies." *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn. 1992). "Review by certiorari is limited to an inspection of the record of the inferior tribunal in which the court is necessarily confined to questions affecting * * * whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Id.* We have established that decisions about granting CUPs are quasi-judicial in nature. *Interstate Power Co., Inc. v. Nobles County Bd. of Comm'rs*, 617 N.W.2d 566, 574 (Minn.2000).

Because certiorari is an extraordinary remedy intended only for review of quasi-judicial decisions, it is not available for review of legislative acts by local gov-

ernment bodies. *Honn,* 313 N.W.2d at 414. We have consistently held that the adoption or amendment of a zoning ordinance is a legislative act. *See, e.g., id.; State, by Rochester Ass'n of Neighborhoods v. City of Rochester,* 268 N.W.2d 885, 888 (Minn.1978); *Beck v. City of St. Paul,* 304 Minn. 438, 231 N.W.2d 919, 925 (1975).

 In the Association's own words, the sole issue in this appeal is "whether counties may establish mixed use commercial and clustered residential developments on natural environment lakes *without first utilizing the land use zoning process* contemplated by the Shoreland Regulations." (Emphasis added.) Disposition of this case on the merits would involve resolution of the question of whether the County may use the CUP process to develop lake property parcel by parcel, or whether the County must engage in a zoning process that provides notice to the public as to how a particular parcel of land will be developed. It would call for an interpretation of the relationship between the Ordinance and the statutes and regulations relating to shoreland development. These issues should first be litigated through a declaratory judgment action in the district court.[10]

We conclude that the Association's attack on the County's zoning decision is an attack on a legislative decision, not reviewable by a writ of certiorari, and hold that the court of appeals lacked jurisdiction to decide whether the Ordinance was valid. We therefore vacate the court of appeals' determination that the Ordinance complied with the standards set forth in state regulations.

Vacated in part.

ANDERSON, RUSSELL A., J., took no part in the consideration or decision of this case.

PAGE, Justice (concurring).

While I agree with the court that the County's zoning decision is a legislative decision not reviewable by writ of certiorari and that the court of appeals therefore lacked jurisdiction to decide whether the ordinance was valid, I write separately to note that, on the merits, I am in agreement with the dissent written by Justice Hanson.

HANSON, Justice (dissenting).

I respectfully dissent. I would conclude that we have jurisdiction to review the issuance of the CUP by certiorari and that the CUP should be vacated because the County had no authority to issue it.

*Jurisdiction*

The majority opinion overly complicates the issue and, by doing so, loses sight of the precise nature of the Association's challenge. The Association's challenge is that the County does not have authority to issue a CUP for the effected property. This is a classic issue for review by writ of certiorari. *Interstate Power Co., Inc. v. Nobles County of Comm'rs,* 617 N.W.2d 566, 574 (Minn.2000) (ruling that the denial of a CUP is a quasi-judicial act that is reviewable by certiorari). The fact that the underlying basis for the Association's claim of lack of authority is that the County has not completed the zoning process that is a prerequisite to the issuance of a CUP is not a challenge to the legislative policy choices the County might make in the process of zoning. To the contrary,

---

**10.** We note that "[a] judgment of a court without jurisdiction of the subject-matter or parties is not res judicata. In other words where the court has no jurisdiction to determine the particular issue in an action its judgment therein does not operate as a bar on that issue." *Muellenberg v. Joblinski,* 188 Minn. 398, 400, 247 N.W. 570, 572 (1933).

the Association complains because the County has not made those legislative policy choices.

The challenge thus does not require review of legislative policy issues, which might raise separation-of-powers concerns, but only review of the statutes and regulations that confer authority to issue CUPs for development of shorelands of public waters. That challenge involves the interpretation of statutes and regulations, a task for which this court is particularly well suited and for which no deference need be given to the County.[11]

It is conceivable that a challenge to the issuance of a CUP may, by its nature, be only a disguised challenge to the legislative zoning decisions made by the governmental body. But that is not the nature of the Association's challenge here because it focuses on the statutory authority for a county to issue a CUP for shoreland development. To the extent that zoning is part of the background, it is clearly ancillary to our jurisdiction to review by certiorari the quasi-judicial act of issuing a CUP.

Further, while I agree with the first part of the majority's observation, that "[d]isposition of this case on the merits would involve resolution of the question of whether the County may use the CUP process to develop lake property parcel by parcel," I do not agree with the second part, that disposition would require resolution of "whether the County must engage in a zoning process that provides notice to the public as to how a particular parcel of land will be developed." The Association seeks to vacate the CUP based upon a negative answer to the first question. But

the Association does not ask us to compel the County to engage in zoning.[12] To the contrary, if the Association is correct that the County cannot issue a CUP until it has completed zoning, the Association would likely be pleased if the County does not engage in zoning.

The points to emphasize on jurisdiction are that the Association challenges the authority of the County to issue a CUP; the challenge is based on the statute and the regulations on shoreland development; the remedy requested is that the CUP be vacated; and the only "record" necessary for the review of the challenge is the CUP, the ordinance, the regulations and the statute. No testimony need or should be taken and no findings are required, or even appropriate. In fact, the district court would do exactly what we would do—review the CUP in light of the Ordinance, the regulations and the statute. We would then review the district court's conclusions de novo.

Because I do not see the need to examine any legislative actions of the County, or the need to develop a record before the district court, I would conclude that we have jurisdiction.

*Validity*

Having concluded that we have jurisdiction on certiorari to review the issuance of the CUP, I would further conclude that the issuance was unlawful because the County is not authorized by law to issue a CUP for shoreland of public waters until it first establishes land use zoning districts for which cluster developments are conditional uses. The court of appeals' decision to the contrary is based on a fundamentally false premise that "[u]nder both the

---

11. To the conclusion stated in the majority and concurring opinions that the County's zoning decision was a legislative one, I can only ask: What legislative authority does a county have to disregard, much less disobey, state law? I think it has none.

12. We would not consider any request to compel the County to engage in zoning because that is the County's legislative prerogative. But, although the County cannot be compelled to zone, it can be required to face the legal consequence of not zoning.

rules and the [ordinance], cluster developments are conditional uses on natural environmental lakes." *Dead Lake Ass'n,* 2004 WL 422570, at *2. Under the regulations, cluster development is a conditional use of some but not all land use districts that are authorized for a natural environmental lake.

In other words, the County complied with only the first step of the shoreland development regulations when it classified the public waters of Dead Lake as a "natural environmental lake." Minn. R. 6120.3000, subp. 1(a) (2003). Under the regulations, the development of shorelands cannot be based merely on the classification of the public waters, but instead "must be controlled by means of the land use zoning districts which are designated to be compatible with the classes of public waters." Minn. R. 6120.3100 (2003). The regulations then authorize five types of land use districts: (1) special protection districts; (2) residential districts; (3) high density residential districts; (4) water-oriented commercial districts; and (5) general use districts. Minn. R. 6120.3200, subp. 3 (2003). And, critical to the analysis here, residential planned use developments are permitted as a conditional use in "high density residential districts" and commercial planned unit developments are permitted as a conditional use in "water-oriented commercial districts" or "general use districts," but there is no authorization for planned unit development as a conditional use for either "special protection districts" or "residential districts." *Id.,* at subp. 4. Because the County's Shoreland Management Ordinance does not establish these districts, it likewise does not satisfy the prerequisites to its authority to issue a CUP.

Further, the attempt of the County to bypass the requirement to establish land use districts by classifying the entire shoreland around Dead Lake as a "district that surrounds a natural environmental lake," and to list cluster development as a conditional use for that entire "district," does not comply with the regulations. If permitted to stand, that mechanism would defeat the purposes for the statutes relating to shoreland developments, to "provide guidance for the wise development of shorelands of public waters," "preserve the economic and natural environmental values of shorelands," and "provide for the wise use of water and related land resources of the state." Minn.Stat. § 103F.201 (2004). The state regulations do not identify a "district that surrounds a natural environmental lake" as an authorized land use district. The obvious purpose of the regulations, in requiring the County to use one or more of the five authorized land use districts, is to require consideration of the criteria that differentiate one district from another. *See* Minn. R. 6120.3800, subp. 2 (2003). This purpose is reinforced by the fact that certain uses, including cluster development, are only permitted in some districts and not others.

The mechanism that the County created to bypass the requirements of the state regulations would, if upheld, enable the County to decide the use of the entire shoreland of Dead Lake by the ad hoc CUP process, without any comprehensive plan. The County's protest that it would not do so does nothing to fill the void in its authority to issue a CUP for cluster development before establishing a land use district for which a cluster development is a conditional use.

I would reverse the court of appeals and vacate the CUP.

ANDERSON, PAUL H., Justice.

I join in the dissent of Justice Hanson.