**In the Matter of the**
**WELFARE OF J.L.U.**

No. C1–89–2187.

Court of Appeals of Minnesota.

Jan. 30, 1990.

Tracy Bains, Southern Minnesota Regional Legal Services, Albert Lea, for petitioner mother.

Peter Plunkett, Warren F. Plunkett & Associates, Austin, for respondents paternal grandparents.

Nancy Evans, Mower Co. Atty., Robert Auron, Asst. Mower Co. Atty., Austin, for respondent Mower County Social Services.

Considered at Special Term and decided by WOZNIAK, C.J., and RANDALL and SCHUMACHER, JJ., without oral argument.

## SPECIAL TERM OPINION

WOZNIAK, Chief Judge.

### FACTS

When the parents of J.L.U. divorced in 1987, custody was awarded to the father. The father died in July 1989. The mother agreed to leave the child in the temporary custody of other relatives, but recent allegations that one of those relatives engaged in sexual abuse led to the mother removing the child from that home and taking custody.

The county petitioned the court for custody under Minn.Stat. § 518.156, subd. 1(b) (1988). No juvenile protection petition was filed under chapter 260. *See* Minn.Stat. §§ 260.015, subd. 2a (Supp.1989) (definition of "child in need of protection or services"); 260.131, subd. 1 (1988) (petition to invoke jurisdiction). The county's petition for custody cited the lack of "emotional support" for the child and the need for further evaluation before a decision on permanent custody.

By order on December 1, 1989, the trial court granted the county's petition for custody, requiring that the child be placed in foster care and that further evaluations be conducted. The trial court cited the mother's recent actions and the potential danger of leaving the child with relatives. The mother seeks a writ of prohibition.

### DECISION

This case highlights the interplay between provisions of Minnesota Statutes Chapter 260, applicable to juvenile protec-

tion proceedings, and Chapter 518, governing custody determinations. Proceedings brought under each statute are distinct. In appropriate cases, juvenile protection proceedings under chapter 260 may be maintained concurrently with custody proceedings under chapter 518. *In re Custody of E.A.Q.D.*, 405 N.W.2d 262, 264 (Minn.Ct. App.1987).

In both types of proceedings, the best interests of the child are paramount. However, a petition for permanent custody involves different issues from a petition alleging that a child is in need of protection or services. *Id.* A disposition in a juvenile protection proceeding may be reviewed frequently, while modification of a custody determination made under chapter 518 is limited by statute. *See* Minn.Stat. § 518.18 (1988); Minn.R.Juv.Cts. 62.06; 62.07. Chapter 260 governs *temporary* placement of a child in need of protection, while chapter 518 focuses on issues of permanency.

■ In this case, the petitioner sought the trial court's assistance in responding to a temporary situation, and the court has ordered temporary foster care placement, but the proceedings were brought under Minn.Stat. § 518.156, which is intended to govern *permanent* custody decisions.

Where concurrent juvenile protection and custody proceedings are pending, consolidation may be appropriate, and the facts of a particular case may justify the dismissal of juvenile protection proceedings, where an award of permanent custody will alleviate the temporary risk to the children. *Durkin v. Hinich*, 442 N.W.2d 148, 152 (Minn. 1989) (affirming *Durkin v. Hinich*, 431 N.W.2d 553 (Minn.Ct.App.1988)).

■ In this case, there is no indication that the county has begun juvenile protection proceedings, and the trial court's award of custody will alleviate the risk to the child only temporarily, without resolving the real problems or the custody dispute between the mother and other relatives. We recognize that the custody dispute may well result in a separate custody proceeding under chapter 518, and the outcome of a juvenile protection proceeding under chapter 260 will not bar such a pro-

ceeding. *In re Welfare of Hall*, 268 N.W.2d 418, 420 (Minn.1978). We express no opinion on the merits of any potential juvenile protection or custody dispute.

We do not decide today whether a county may *ever* petition for permanent custody under Minn.Stat. § 518.156, subd. 1(b), and we note that the language of the statute does not explicitly preclude such petitions. *See Murray v. Murray*, 367 N.W.2d 561, 563–64 (Minn.Ct.App.1985) (implying that county may be third party entitled to seek custody under section 518.156). We have focused instead on the nature of the county's petition in this case. The allegations made might support a petition to find the child to be in need of protection or services, *see* Minn.Stat. § 260.015, subd. 2a (Supp. 1989), but they do *not* support a petition for a permanent award of custody to the county.

Juvenile protection proceedings are within the *exclusive* jurisdiction of the juvenile court, and they are governed by chapter 260. *Murray*, 367 N.W.2d at 564–65. Even after the merger of the juvenile (county) courts with the district courts, we must look to the basis for the trial court's jurisdiction in a particular proceeding. Here, the county invoked the trial court's jurisdiction only under chapter 518. A court acting pursuant to chapter 518 may not award temporary custody to the county. *Id.* at 564. The trial court clearly exceeded its authority by awarding temporary custody to the county in a proceeding brought under chapter 518.

Writ of prohibition issued.