Judy STERN, petitioner, Appellant,

v.

Tanya Kay STERN, Respondent,

Michael Meier, Respondent,

Michael Christofiles, Respondent,

Nobles County Family Service Agency, Respondent.

No. A13–0447.

Court of Appeals of Minnesota.

Oct. 15, 2013.

Virginia M. Barron, Westbrook, MN, for appellant.

Tanya Kay Stern, Round Lake, MN, pro se respondent.

Michael Meier, Worthington, MN, pro se respondent.

Michael Christofiles, Fort Lewis, WA, pro se respondent.

Kathleen A. Kusz, Nobles County Attorney, Travis J. Smith, Assistant County Attorney, Worthington, MN, for respondent county.

Considered and decided by HALBROOKS, Presiding Judge; SCHELLHAS, Judge; and HOOTEN, Judge.

## OPINION

HOOTEN, Judge.

Appellant-grandmother challenges the dismissal of her petition for de facto custody of her grandchildren, arguing that the family court erred by concluding that it had no concurrent jurisdiction to consider the petition because of pending child protection and permanency proceedings in juvenile court and that the dismissal of her petition violated her rights to due process.[1] Because the family court correctly dismissed appellant's petition for lack of concurrent jurisdiction, and because appellant was not denied due process, we affirm.

## FACTS

On November 29, 2012, appellant Judy Stern filed a petition to be named the de facto custodian of her two minor grandchildren pursuant to Minn.Stat. § 257C.03. The respondents in this appeal include the Nobles County Family Service Agency (the county), the children's mother, and the father of each child. At the time of appellant's petition for de facto custody, the children were under the protective custody of the county in a child in need of protection or services (CHIPS) proceeding. As a result of an emergency protective custody order issued by the juvenile court on September 18, 2012, the children were placed in relative foster care in appellant's home. Prior to filing the petition for de facto custody in family court, appellant filed a petition in the CHIPS proceeding under Minn.Stat. § 260C.515, subd. 4 (2012), requesting that the juvenile court award her permanent legal and physical custody of the children.

In an amended de facto custody petition filed December 18, 2012, appellant alleged that the grandchildren lived with her for one year or more during the 24 months preceding the filing of the petition and prior to their placement with her as a foster parent in the CHIPS proceeding. In response to her petition, the mother and fathers of the children agreed that appellant had provided consistent care to the children and that it would be in the children's best interests if appellant were granted full custody of the children. The county moved to dismiss appellant's petition for de facto custody, arguing that the

---

1. Minnesota law provides that a district court may establish various divisions, including a family court division and a juvenile court division. Minn.Stat. § 484.86, subd. 1 (2012). In this case, as in many counties in Minnesota, there is no separately designated judge of the family or juvenile court divisions, but, as is often the case, a district court judge may preside, even on the same calendar, over matters arising in both divisions. This was recognized by Justice Dietzen when he explained: "The potential problem with having a district judge wear different 'hats' as a district court and juvenile court judge is that the judge must clarify on the record the capacity upon which the judge acts." *Vang v. State*, 788 N.W.2d 111, 118 (Minn.2010) (Dietzen, J., concurring). For purposes of this opinion, so as to avoid confusion, the family court division in which appellant filed her petition for de facto custody will be referred to as the "family court," while the juvenile court division, consistent with Minn.Stat. § 260C.007, subd. 9 (2012), will be referred to as the "juvenile court."

family court lacked concurrent jurisdiction over the children and that appellant was not a de facto custodian.

In response to the county's motion to dismiss, the family court held that because the juvenile court exercises original and exclusive jurisdiction over the pending CHIPS proceeding, it did not have concurrent jurisdiction over appellant's amended petition for de facto custody of the children. The family court also concluded that appellant was statutorily ineligible to be a de facto custodian because the children were placed in her home by court order in the CHIPS proceeding. This appeal follows.

## ISSUES

I. Did the family court lack concurrent jurisdiction over appellant's petition for de facto custody of children who were subjects of pending CHIPS and permanency proceedings?

II. Does the lack of concurrent family court jurisdiction over the petition for de facto custody prohibit appellant from seeking permanent custody of the children and, as a result, deny her right to due process?

## ANALYSIS

### I.

Appellant argues that the family court erred in dismissing her petition for de facto custody on the basis that it lacked concurrent jurisdiction in light of the pending CHIPS and permanency proceedings in juvenile court. When the county's motion to dismiss appellant's petition was heard, the county argued that the family court lacked concurrent jurisdiction over appellant's petition for de facto custody. However, on appeal and in light of the family court's favorable ruling on the merits in its dismissal motion, the county has joined appellant in maintaining that the family court had concurrent jurisdiction over appellant's petition for de facto custody. Because the county cannot waive the family court's lack of concurrent jurisdiction, and because appellant was aggrieved by the family court's ruling that it lacked concurrent jurisdiction, we will consider this issue on appeal. *See Dead Lake Ass'n, Inc. v. Otter Tail Cnty.*, 695 N.W.2d 129, 134 (Minn.2005) (holding that "lack of subject matter jurisdiction may be raised at any time by the parties or sua sponte by the court, and cannot be waived by the parties").

 "The existence of subject-matter jurisdiction and a determination of the meaning of statutes addressing subject-matter jurisdiction present legal questions, which this court reviews de novo." *Wareham v. Wareham*, 791 N.W.2d 562, 564 (Minn.App.2010). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (quotation and citation omitted). "When construing a statute, our goal is to ascertain and effectuate the intention of the legislature." *Id.* at 278. "[W]hen we construe a statute, we read the statute as a whole and turn to statutes relating to the same subject in order that we may avoid conflicting interpretations and give effect to all statutory provisions." *City of St. Paul v. Eldredge*, 800 N.W.2d 643, 648 (Minn.2011).

Section 257C.03 sets forth the necessary procedures and standards for an award of de facto custody. "To establish that an individual is a de facto custodian, the individual must ... show by clear and convincing evidence that the individual satisfies the provisions of section 257C.01, subdivi-

sion 2" and "prove by a preponderance of the evidence that it is in the best interests of the child to be in the custody of the de facto custodian." Minn.Stat. § 257C.03, subd. 6(a) (2012). A "de facto custodian" is defined by statute as:

> an individual who has been the primary caretaker for a child who has, within the 24 months immediately preceding the filing of the petition, resided with the individual without a parent present and with a lack of demonstrated consistent participation by a parent for a period of . . . one year or more, which need not be consecutive, if the child is three years of age or older.

Minn.Stat. § 257C.01, subd. 2(a)(2) (2012).

In support of her argument that the family court had concurrent jurisdiction to address her petition for de facto custody, appellant points out that while Minn.Stat. § 260C.101, subd. 2 (2012), enumerates specific instances in which "[t]he juvenile court has original and exclusive jurisdiction," none of the specific instances enumerated include family law proceedings or proceedings to establish de facto custody.

Appellant's argument ignores the clear and unambiguous statutory language granting jurisdiction to the juvenile court. Section 260C.101, subdivision 1 (2012), provides that "[t]he juvenile court has original and exclusive jurisdiction in proceedings concerning any child who is alleged to be in need of protection or services, or neglected and in foster care." The phrase "concerning any child who is alleged to be in need of protection or services" manifests the legislature's broad intent for the juvenile court to exercise "original and exclusive jurisdiction" over child protection issues relating to such children. Section 260C.101, subdivision 2, which immediately follows the statute granting the juvenile court original and exclusive jurisdiction in

CHIPS matters, expands this grant of "original and exclusive jurisdiction" to include "[o]ther matters relating to children," such as the termination of parental rights to a child, permanency dispositions, appointment of a guardian, judicial consent to marriage, adoption, and placement in foster care or a treatment facility.

While appellant recognizes that there are issues involving permanent legal and physical custody of the children pending before the juvenile court, appellant argues that these statutes do not prohibit the family court from simultaneously considering these same issues in response to her petition for de facto custody. We disagree. One of the primary objectives of child protection and permanency proceedings in juvenile court is to obtain "permanent placement" of children in accordance with their best interests. Minn.Stat. § 260C.001, subd. 2(7), 3 (2012). Subdivision 2(2) of section 260C.101 provides that the juvenile court has original and exclusive jurisdiction over "permanency matters under sections 260C.503 to 260C.521." Section 260C.515, subdivision 4, permits the juvenile court to "order permanent legal and physical custody to a relative in the best interests of the child." Because appellant has filed a petition proceeding asking that the juvenile court permanently award her legal and physical custody of the children, the juvenile court has original and exclusive jurisdiction of her permanency petition under subdivision 2(2), as well as original and exclusive jurisdiction of the child protection issues as set forth in subdivision 1.

Appellant's designation of an exception to the juvenile court's original and exclusive jurisdiction over these issues violates the statutory mandate that "[e]very law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16 (2012). Such interpretation is

also inconsistent with the statutory presumptions of construction set forth in Minn.Stat. § 645.17 (2012), which provide that, in ascertaining the intention of the legislature, it is presumed that the legislature did not intend an absurd or unreasonable result and intended that the entire statute be effective and certain. If we were to adopt appellant's interpretation, we would not only ignore the clear and unambiguous language of the statutes granting original and exclusive jurisdiction to the juvenile court over custody issues, but we would also create an absurd result with the family court and juvenile court simultaneously considering the same issues and possibly reaching inconsistent decisions.

Numerous provisions in the statutes reference the interplay between chapters 257, 518, or 518A and the juvenile protection provisions of the juvenile court act. For example, the statutory definition of "parent" under the juvenile court act incorporates the parental presumptions and duties of the parent and child relationship as set forth in sections 257.51 to 257.74 or 257.75. Minn.Stat. § 260C.007, subd. 25(a) (2012). Section 257C.01, subdivision 2(d)(2), consistent with the statutorily mandated exclusive jurisdiction of the juvenile court, excludes "an individual who has a child placed in the individual's care ... through a court order or voluntary placement agreement under chapter 260C" from its definition of a "de facto custodian." In a CHIPS proceeding in which there has been an out-of-home placement, a social services agency "may petition on behalf of a noncustodial parent to establish legal custody with that parent under section 260C.515, subdivision 4," and "[i]f paternity has not already been established, it may be established in the same proceeding in the manner provided for under chapter 257." Minn.Stat. § 260C.219(a)(3) (2012). If a child is a victim of domestic child abuse, temporary visitation or support in CHIPS proceedings may be based on the same criteria as provided in chapter 518. Minn.Stat. § 260C.201, subd. 3(3), (4) (2012). "If the court issues an order for protection," it shall transfer the case file to the family court "for the purpose of establishing support or maintenance" for the "effective period of the order for protection." Minn.Stat. § 260C.201, subd. 4 (2012). "After an order for support or maintenance has been granted or denied, the case file shall be returned to the juvenile court, and the order for support or maintenance, if any, shall be incorporated into the order for protection." *Id.* If the juvenile court issues an order for a relative to have permanent legal and physical custody, custody "may be modified using standards under sections 518.18 and 518.185" in a proceeding that includes social services as a party. Minn.Stat. § 260C.521, subd. 2 (2012).

None of these references to chapters 257, 518, or 518A in the juvenile court act suggest that the family court may have concurrent jurisdiction with the juvenile court relative to issues over which the juvenile court has original and exclusive jurisdiction. Rather, these statutes demonstrate that the juvenile court, which does not have original and exclusive jurisdiction over certain family court issues, defers to the family court relative to those issues, and the family court must likewise defer to the original and exclusive jurisdiction of the juvenile court relative to issues within its authority.

Appellant also argues that Minn. R. Juv. Prot. P. 1.02(h), which provides for "a coordinated decision-making process" with regard to juvenile protection matters in juvenile court, contemplates the existence of multiple files and establishes that the juvenile court does not have original and exclusive jurisdiction over family law mat-

ters. As noted by appellant, the rule "calls for coordinated decision-making in those cases where one family is involved in simultaneous juvenile, criminal, and family court matters" and that "[t]he parties and the court should coordinate the separate proceedings to assure a consistent outcome that is in the best interests of the child." Minn. R. Juv. Prot. P. 1.02(h) comm. cmt.

But this singular comment does not support appellant's claim that the juvenile court does not have original and exclusive jurisdiction in CHIPS and permanency proceedings involving the children. Rather, the comment acknowledges that there may be issues in criminal and family court that may affect the ultimate protection and permanency decisions made by the juvenile court, such as the determination of paternity of a child in family court or the incarceration of a parent in criminal court, or require the coordination of scheduling between different judicial settings. There is no support for appellant's claim that the family court may make a permanency disposition by granting a petition for de facto custody involving children who are subjects of CHIPS and permanency proceedings. Moreover, other rules highlight the family court's deference to issues within the original and exclusive jurisdiction of the juvenile court. *See* Minn. R. Juv. Prot. P. 42.07, subd. 2, (providing that "[i]f the court transfers permanent legal and physical custody to a relative, juvenile court jurisdiction is terminated unless specifically retained by the court in its order"); Minn. R. Juv. Prot. P. 42.07, subd. 4 (providing that the juvenile court "shall include an order directing the juvenile court administrator to file the order with the family court," thus requiring that the family court defer to the juvenile court order).

In support of its argument on appeal that the family court had concurrent jurisdiction over appellant's petition for de facto custody, the county relies on this court's decision in *In re Custody of E.A.Q.D.*, 405 N.W.2d 262 (Minn.App. 1987). In *E.A.Q.D.*, two children, after the death of their mother, resided in the home of an unrelated family, the Simpsons, for approximately four and one-half years. *Id.* at 263. After filing a private dependency petition in juvenile court naming the children's maternal grandmother and the father of each child, legal custody was transferred to Ramsey County Community Human Services (RCCHS) with placement in the Simpson home. *Id.* About two months later, "the Simpsons sought dismissal of their dependency petition," and "[e]ntry of the dismissal was stayed to allow RCCHS an opportunity to file its own petition." *Id.* Days later, "the Simpsons filed a petition in family court under Minn.Stat. § 518.156 (1984) seeking 'sole legal and physical custody' of the children" and obtained an ex parte order granting them temporary physical custody of the children. *Id.*

About one month later, "RCCHS filed a neglect and dependency petition in juvenile court," and the children were found to be neglected and dependent as to both fathers. *Id.* The juvenile court granted temporary legal custody to RCCHS, with placement with the Simpsons pending the family court's determination of the Simpsons' petition under chapter 518. *Id.* Later, after RCCHS was permitted to intervene in the family court matter, the family court determined that chapter 260 governed the action and granted the grandmother's motion to dismiss the Simpsons' family court petition. *Id.* The juvenile court later continued temporary placement in the Simpson residence pending reunification of the children with their fathers or grandmother. *Id.*

This court reversed the dismissal of the family court petition under chapter 518

because to rule otherwise would have precluded the Simpsons from being heard on their petition for permanent custody of the children. *Id.* at 264–65. Recognizing the concerns "over the conflict and confusion created by the existence of two separate proceedings in different courts," we remanded with "instructions to transfer the Simpsons' petition to juvenile court." *Id.* We reasoned that "the competing interests of the adult litigants and the best interests of the children will be best served by the joinder of the contested issues in one court at one time." *Id.* at 265.

The county maintains that our reversal of the dismissal of the petition in *E.A.Q.D.* supports its claim that the family court has concurrent jurisdiction in this case, arguing that the "original and exclusive" jurisdictional statute in effect at the time of that case is substantially similar to Minn. Stat. § 260C.101, subd. 1. *See* Minn.Stat. § 260.111, subd. 1 (1984) (stating that the juvenile court had "original and exclusive jurisdiction in proceedings concerning any child" alleged to be "neglected" or "neglected and in foster care").

The county's arguments are misplaced. First, the county misinterprets our holding in *E.A.Q.D.* Working within the statutory framework at the time, we indicated that the Simpsons should have had a mechanism by which they could assert their rights as prospective custodians of the children. At the same time, we wanted to avoid competing decisions from the juvenile and family courts regarding custody of the children. For that reason, this court reversed the dismissal of the Simpsons' petition by the family court and remanded with instructions to transfer the petition to juvenile court. Contrary to the arguments

of the county, nothing in *E.A.Q.D.* allows the family court and the juvenile court to conduct simultaneous proceedings regarding custody of the children.

Second, after our decision in *E.A.Q.D.*, there have been significant modifications to Minnesota's child protection statutes, including provisions expanding the jurisdiction of the juvenile court.[2] Now, the "original and exclusive" jurisdiction of the juvenile court includes all proceedings "concerning any child who is alleged to be in need of protection or services,"[3] as well as all permanency matters for children who are in foster care or in the care of a noncustodial parent.[4] Minn.Stat. § 260C.101, subds. 1, 2(2).

At the time of our decision in *E.A.Q.D.*, no clear mechanism existed whereby a private party could seek permanent legal and physical custody of children as part of a child protection proceeding. Section 260.242, subdivision 1 (1984), simply provided that, upon the termination of "parental rights of both parents or of the only known living parent," the court was to "order the guardianship and the legal custody of the child transferred to" the human services commissioner, a licensed child placing agency, or "[a]n individual who is willing and capable of assuming the appropriate duties and responsibilities of the child." Section 260.242, subdivision 2(b) (1984), empowered the guardian to "make major decisions affecting the person of his ward." Section 260.015, subdivision 8 (1984), defined "legal custody" as "the right to the care, custody, and control of a child who has been taken from a parent by the court," but there was no formal procedure established for transferring perma-

---

**2.** The child protection provisions in chapter 260 were replaced by chapter 260C. *See* 1999 Minn. Laws, ch. 139, art. 3, at 632–91 (effective Aug. 1, 1999).

**3.** Enacted by 1999 Minn. Laws ch. 139, art. 3, § 4, at 638 (effective Aug. 1, 1999).

**4.** Enacted by 2012 Minn. Laws ch. 216, art. 4, § 31, at 477 (effective Aug. 1, 2012).

nent custody upon termination. In light of these provisions, this court has previously recognized that custody determinations in family law proceedings are distinct from proceedings under chapter 260. *See In re Welfare of J.L.U.*, 450 N.W.2d 642, 644 (Minn.App.1990) ("Chapter 260 governs *temporary* placement of a child in need of protection, while chapter 518 focuses on issues of permanency.").

The current juvenile court act contains numerous provisions that allow relatives and private parties to seek permanent legal and physical custody of children in CHIPS and permanency proceedings. In *E.A.Q.D.*, 405 N.W.2d at 264, the Simpsons were precluded "from being heard on their petition for permanent custody" after the dismissal of their family law petition for permanent custody, but appellant, by virtue of her permanency petition and status as appointed caregiver in the CHIPS proceeding, retains the opportunity to seek permanent custody as part of the child protection proceedings. This opportunity is provided by section 260C.204(a)(3) (2012),[5] which provides:

> When a child continues in placement out of the home of the parent or guardian from whom the child was removed, no later than six months after the child's placement the court shall conduct a permanency progress hearing to review ... the agency's reasonable efforts to finalize the permanent plan for the child under section 260.012, paragraph (e), and to make a placement as required under section 260C.212, subdivision 2, in a home that will commit to being the legally permanent family for the child in

the event the child cannot return home according to the timelines in this section[.]

"Reasonable efforts to finalize a permanent plan for the child" includes placing "siblings removed from their home in the same home for foster care or adoption, or transferring permanent legal and physical custody to a relative." Minn.Stat. § 260.012(e) (2012). As noted, appellant has availed herself of the remedy set forth in section 260C.515, subdivision 4,[6] which allows the juvenile court to transfer permanent legal and physical custody to a relative.

Given the substantial modifications to the juvenile protection provisions of the juvenile court act since our decision in *E.A.Q.D.*, and the clear and unambiguous language in section 260C.101, subdivisions 1 and 2, the family court correctly concluded that it was without concurrent jurisdiction over appellant's petition for de facto custody.[7]

## II.

Appellant also argues that as a result of the dismissal of her petition for de facto custody, she has been deprived of due process of law because she has no reasonable opportunity to preserve her rights as a de facto custodian or other legal rights to the children. To the extent that she alleges that the juvenile court erred in transferring custody of the children to the county without providing her legal representation at the time of the transfer and emergency protection hearing, this issue is not properly before this court for purposes of this

---

5. Enacted by 2001 Minn. Laws ch. 178, art. 1, § 23, at 624 (effective Aug. 1, 2001).

6. Enacted by 2012 Minn. Laws ch. 216, art. 4, § 31, at 477 (effective Aug. 1, 2012).

7. Because we conclude that the family court had no concurrent jurisdiction over appel-

lant's petition for de facto custody, we do not address her argument that the family court erred by concluding that she is statutorily ineligible to seek de facto custody pursuant to section 257C.01, subdivision 2(d)(2).

appeal. *See* Minn. R. Civ.App. P. 103.04 ("On appeal from or review of an order the appellate courts may review any order affecting the order from which the appeal is taken and on appeal from a judgment may review any order involving the merits or affecting the judgment."); *see also Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that the appellate court will not consider matters not raised or considered by the district court). Appellant fails to establish that any alleged deficiency in the CHIPS proceeding affect the merits of the concurrent jurisdictional issue currently on appeal of this family court order.

■ Appellant fails to show that she was deprived of due process as a result of the dismissal of her petition for de facto custody. Although not specified, appellant's argument appears to raise the issue of procedural due process, which asks "whether the government has deprived the individual of a protected life, liberty, or property interest." *Sawh v. City of Lino Lakes,* 823 N.W.2d 627, 632 (Minn.2012). "If the government's action does not deprive an individual of such an interest, then no process is due." *Id.*

■ Appellant fails to establish that she has been deprived of a protected life, liberty, or property interest. She incorrectly states that she has no means available to lawfully assert her rights as a custodian of the children or to contest the county's involvement in the CHIPS proceeding. Rather, "[a]ny grandparent of the child has a right to participate in the proceedings to the same extent as a parent, if the child has lived with the grandparent within the two years preceding the filing of the petition." Minn.Stat. § 260C.163, subd. 2 (2012). Minn. R. Juv. Prot. P. 23.01, subd. 2, provides that "[a]ny grandparent of the child shall have the right to intervene as a party if the child has lived with the grandparent within the two (2) years preceding

the filing of the petition." Appellant, as an individual entitled to intervention of right, had "the right to be represented by counsel in every juvenile protection matter." Minn. R. Juv. Prot. P. 25.01.

Most significantly, appellant has availed herself of the opportunity to obtain permanent legal and physical custody of the children as a proposed permanency disposition pursuant to section 260C.515, subdivision 4. As a party, appellant also had the right under Minn. R. Juv. Prot. P. 21.02(h) to argue in support of or against the CHIPS petition. With this array of rights in the CHIPS proceeding and her right to seek permanent custody of the children in juvenile court, we find no merit to appellant's claims that she was deprived of due process.

## DECISION

The family court did not err in dismissing appellant's petition for de facto custody for lack of concurrent jurisdiction. The juvenile court exercised original and exclusive jurisdiction over proceedings concerning the children who were alleged to be in need of protection or services, and also over appellant's permanency proceeding. Because appellant has been given the opportunity to seek permanent custody of the children as part of the child protection proceedings, she was not denied due process because of the family court's dismissal of her petition for de facto custody.

**Affirmed.**