# STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-1992

In the Matter of the Welfare of the Child of: A.H., Parent.

**Filed April 25, 2016**
**Affirmed**
**Stauber, Judge**

Hennepin County District Court
File No. 27-JV-13-3924

Kimberly J. Robinson, Jillian K. Duffy, Robinson Duffy, P.L.L.C., Minneapolis, Minnesota (for appellant A.H.)

Samantha J. Gemberling, Wolf, Rohr, Gemberling & Allen, P.A., St. Paul, Minnesota (for respondents K.W. and N.W.)

Michael O. Freeman, Hennepin County Attorney, Minneapolis, Minnesota; and

Kathryn Eilers, Special Assistant County Attorney, St. Paul, Minnesota (for respondent HCHSPHD)

Deaundres D. Wilson, Minneapolis, Minnesota (for respondent Z.W.)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Stauber, Judge.

## S Y L L A B U S

1. The juvenile court has "original and exclusive jurisdiction" over visitation issues raised in post-permanency proceedings under Minn. Stat. §§ 260C.503-.521 (2014).

2. The juvenile court must use the best-interests standard of Minn. Stat. § 260C.511 when deciding whether to modify visitation in a post-permanency proceeding.

**O P I N I O N**

**STAUBER**, Judge

Appellant biological mother permanently transferred legal and physical custody of her child to a relative during the trial on a petition to terminate her parental rights. In this post-permanency proceeding, appellant challenges the juvenile court's order reducing her visitation time with the child, arguing that the juvenile court (1) does not have jurisdiction over the issue of visitation; (2) should have applied the best-interests standards of Minn. Stat. § 518.175; (3) erred by not holding an evidentiary hearing; and (4) abused its discretion. We affirm.

**FACTS**

Appellant A.H. and respondent Z.W. are the biological parents of A.W., born July 13, 2012. A.H. was a minor when A.W. was born; A.H. and Z.W. never married. On November 12, 2012, when A.W. was four months old, he was removed from the parents' custody and placed in protective care after a pediatrician discovered that A.W. had eight healing rib fractures and several bruises. A child-in-need-of-protection-or-services (CHIPS) petition was filed in December 2012. In June 2013, respondent Hennepin County Human Services and Public Health Department (the county) filed a petition to terminate the biological parents' parental rights. After the first day of trial in January 2014, A.H. and Z.W. agreed to a permanent transfer of legal and physical custody of A.W. to respondent K.W., a relative of the child, and his wife, N.W. (legal guardians). As part of the transfer of legal and physical custody, A.H. and Z.W. were allowed twelve hours a month of "combined supervised parenting time." Strict conditions about

2

visitation time, transport, supervision, participation, and expenses of visitation supervisors are set forth in the agreement.

Visitation has been a continuing source of conflict, and A.H. has been hostile toward the legal guardians and dismissive of their requests regarding sweets and video time during visitation. A.H. and Z.W. are angry because the legal guardians refer to the child by a name other than his legal name, although his legal name is used in all documents and records, and because the child refers to the legal guardians as "momma and poppa." The biological parents want the child to be encouraged to call them "mother" and "daddy" or similar names.

In September 2014, A.H. and Z.W. moved for expanded visitation time. The juvenile court denied this motion, concluding that the biological parents had not shown that expanded visitation was in the child's best interests. The juvenile court cited Minn. Stat. §§ 518.18, .185 (2014) to support its decision, but did not refer to either Minn. Stat. § 260C.511 (providing that court must consider best interests of child in permanency proceedings) or Minn. Stat. § 518.175 (governing parenting time in marital dissolution or separation proceedings).

In September 2015, A.H. moved for changes to the visitation schedule and to address issues of the child's name, the child's name for the legal guardians, and the child's name for A.H. The legal guardians filed a counter motion asking that visitation be reduced to one three-hour visit per month. After reviewing the filings and hearing the parties' arguments, but without holding an evidentiary hearing, the juvenile court granted the legal guardians' motion to reduce visitation time and set forth other visitation

conditions. The juvenile court denied all other motions and retained jurisdiction over the case. A.H. appeals from this order.

## ISSUES

1.      Does the juvenile court have jurisdiction over visitation issues arising in a post-permanency proceeding under Minn. Stat. §§ 260C.503-.521?

2.      In a post-permanency proceeding involving visitation, did the juvenile court err by applying the best-interests standard of Minn. Stat. § 260C.511, rather than the endangerment standard of Minn. Stat. § 518.175?

3.      Did the juvenile court err by deciding visitation issues in a post-permanency proceeding without holding an evidentiary hearing?

4.      Did the juvenile court abuse its discretion by reducing the biological parents' visitation time?

## ANALYSIS

## I.

A.H. argues that the juvenile court lacks jurisdiction[1] to modify visitation in post-permanency proceedings, or that it has concurrent jurisdiction with the family court in post-permanency proceedings. Because of this, A.H. asserts that questions of visitation or parenting time should be referred to the family court and should be analyzed under the

_____

[1] A.H. uses "jurisdiction" in the sense that the juvenile court lacks authority to address visitation questions. *See Moore v. Moore*, 734 N.W.2d 285, 287 n.1 (Minn. App. 2007), *review denied* (Minn. Sept. 18, 2007). Because the statute refers to the juvenile court's "original and exclusive jurisdiction," we will refer to the juvenile court's authority as "jurisdiction."

4

family court standards for modification of parenting time. We review jurisdiction de novo as a question of law. *Nelson v. Schlener*, 859 N.W.2d 288, 291 (Minn. 2015).

The juvenile court has "original and exclusive jurisdiction in proceedings concerning any child who is alleged to be in need of protection or services." Minn. Stat. § 260C.101, subd. 1 (2014). It also has "original and exclusive jurisdiction in proceedings concerning . . . permanency matters under sections 260C.503 to 260C.521." Minn. Stat. § 260C.101, subd. 2(2) (2014). These sections set forth the possible permanency dispositions, including transfer of "permanent legal and physical custody to a fit and willing relative." Minn. Stat. § 260C.515, subd. 4. Under this section, the juvenile court must "follow the standards applicable under this chapter and chapter 260, and the procedures in the Minnesota Rules of Juvenile Protection Procedure." *Id.*, subd. 4(2).

The juvenile court may maintain jurisdiction over the parties "for purposes of ensuring appropriate services are delivered to the child and permanent legal custodian for the purpose of ensuring conditions ordered by the court related to the care and custody of the child are met."[2] *Id.*, subd. 4(10). Similarly, Minn. R. Juv. Prot. P. 42.07, subd. 7, states:

> When the court orders transfer of permanent legal and physical custody to a relative under this Rule, the court may retain jurisdiction over the responsible social services agency, the parents or guardian of the child, the child, and the

---

[2] Counsel for the county asserts that there is a typographical error in this clause based on the mirror image text in the juvenile protection rules; the rule contains the word "or" halfway through the clause that mirrors this statement from the statute. *See* Minn. R. Juv. Prot. 42.07, subd. 7 (regarding retention of jurisdiction).

permanent legal and physical custodian. The court may conduct reviews at such frequency as the court determines will serve the child's best interests for the purpose of ensuring:
> (a)    appropriate services are delivered to the child and the permanent legal and physical custodian; or
> (b)    conditions ordered by the court relating to the care and custody of the child are met.

And Minn. R. Juv. Prot. P. 42.07, subd. 2, states, "If the court transfers permanent legal and physical custody to a relative, juvenile court jurisdiction is terminated unless specifically retained by the court." These rules are incorporated into the statute under the terms of Minn. Stat. § 260C.515, subd. 4(2). Although the language of the statute and the rules is discretionary, in this case the juvenile court specifically retained jurisdiction in both its original permanency order and the current order.[3]

In *Stern v. Stern*, 839 N.W.2d 96, 99-104 (Minn. App. 2013), this court analyzed whether the family court and juvenile court shared concurrent jurisdiction over the appointment of a de facto custodian. This court acknowledged the "interplay" among juvenile protection statutes, family law provisions, and criminal statutes, and concluded that the family court and juvenile court did not share concurrent jurisdiction over issues of permanent placement for children involved in CHIPS or other juvenile court proceedings; rather, the juvenile court retained jurisdiction over issues assigned to its "original and exclusive jurisdiction." *Id.* at 100-01. For example, the juvenile court may transfer a permanency case to the family court for purposes of establishing support or

---

[3] The juvenile court's retention of jurisdiction is consistent with a standing order in Hennepin County, which states that in cases involving a transfer of legal custody by the juvenile court, "motions to change custody and parenting time assistance motions" filed for orders entered after August 1, 2012, must be made in juvenile court.

maintenance.  *Id.* at 101-02.  But "the family court must . . . defer to the original and exclusive jurisdiction of the juvenile court relative to issues within its authority."  *Id.* at 101.  Here, the juvenile court had original and exclusive jurisdiction over the permanency issue based on the statute, rules, and the judicial district's standing order, and it specifically retained that jurisdiction.

Finally, the focus of the marital dissolution statutes is to identify the rights of parties to a marriage.  *See* Minn. Stat. § 518.175, subd. 1(a) (stating that the family court shall grant parenting time "[i]n all proceedings for dissolution or legal separation").[4]  In contrast, the juvenile protection statutes state "[t]he paramount consideration in all juvenile protection proceedings is the health, safety, and best interests of the child," Minn. Stat. § 260C.001, subd. 2(a) (2014), and "[t]he paramount consideration in all proceedings for permanent placement of the child . . . is the best interests of the child." Minn. Stat. § 260C.001, subd. 3(3) (2014).  Here, the focus is on the best interests of A.W., and not on the interests of the biological parents.  The juvenile court had and retained original and exclusive jurisdiction over the question of visitation in a post-permanency proceeding.

**II.**

---

[4] The district court also determines custody and parenting time using the standards set forth in Minn. Stat. §§ 518.17, .175, when paternity is established under Minn. Stat. §§ 257.51-.74 (2014).  Z.W. admitted paternity, and these parties were not in family court as part of a paternity action but were in juvenile court because of the CHIPS and TPR petitions.

A.H. argues that the juvenile court erred by not applying the standards of Minn. Stat. § 518.175, which govern "parenting time" in marital dissolution matters. In conjunction with this argument, A.H. contends that the juvenile court awarded her "parenting time," a concept of family law set forth in the dissolution statute, and that the juvenile court did this in a final order, thus establishing the law of the case. The juvenile court refers interchangeably to "parenting time" and "visitation" throughout its order, and did so as well in the April 3, 2014 permanency order. In its September 3, 2014 visitation order, the juvenile court again uses the terms interchangeably, and at one time asserts that it has the power "to modify visitation or parenting time" under Minn. Stat. § 518.175.

The juvenile court erred in this assertion. The juvenile protection statute does not give the juvenile court authority to award, much less modify, visitation under Minn. Stat. § 518.175, although it "may" apply the standards of Minn. Stat. §§ 518.18, .185 in modifying permanent legal and physical custody to a relative. Minn. Stat. § 260C.521, subd. 2. But "we will not reverse a correct decision simply because it is based on incorrect reasons." *Katz v. Katz*, 408 N.W.2d 835, 839 (Minn. 1987).

This matter has taken place exclusively in the juvenile court under the juvenile protection statutes, Minn. Stat. §§ 260C.001-.637 (2014). The juvenile court never terminated its jurisdiction, which would permit transfer to the family court; instead, the juvenile court specifically retained jurisdiction in its orders. *See* Minn. R. Juv. Prot. P. 42.07, subd. 2 (stating that juvenile court jurisdiction is terminated after transfer of permanent legal and physical custody to a relative "*unless specifically retained by the court*") (emphasis added)).

The juvenile court has jurisdiction over this case and these parties; and the juvenile-protection statutes neither require nor allow the juvenile court to use the family court marital-dissolution statutes to establish or evaluate visitation, which the juvenile court has the authority to award. The juvenile court here may have loosely alternated between use of the terms "parenting time" and "visitation," but that does not change the law applicable to this case.

The juvenile-protection statutes discuss visitation in several circumstances: (1) with parents of a child subject to a CHIPS petition, Minn. Stat. § 260C.178, subd. 3; (2) when children are in foster care, Minn. Stat. § 260C.201, subd. 5; (3) when children are in out-of-home placement, Minn. Stat. § 260C.204(c) (2); (4) as part of a communication or contact agreement after termination of parental rights, Minn. Stat. § 260C.317, subd. 1(2); and (5) as part of a communication-and-contact agreement after adoption, Minn. Stat. § 260C.619. All of these sections require the juvenile court to assess whether the proposed visitation is in the best interests of the child. The juvenile-protection statutes define "best interests" to include "all relevant factors to be considered and evaluated." Minn. Stat. § 260C.511(a). There is no reference to the parenting-time statute, Minn. Stat. § 518.175. The juvenile court did not err by applying the juvenile-protection standards rather than the family court standards of Minn. Stat. § 518.175.

**III.**

A.H. argues that she was denied her right to an evidentiary hearing. A.H. relies on Minn. Stat. § 518.175, subd. 1(b), which provides that the district court "after a hearing" shall restrict parenting time when a child's physical or emotional health and development

9

are endangered. But this statute applies to modification of parenting time under the dissolution statutes, not modification of visitation in a post-permanency proceeding. We note that A.H., who objects here to the legal custodians' submission of a parenting report, had received the parenting report in a timely fashion and was allowed to submit a response to the parenting report after the motion hearing. The juvenile court did not err by deciding this issue without an evidentiary hearing.

**IV.**

We review a juvenile court's assessment of best-interest factors for an abuse of discretion. *In re Welfare of Children of D.F.*, 752 N.W.2d 88, 95 (Minn. App. 2008) (stating standard of review of court's best interest analysis in a termination-of-parental-rights case). Relying on Minn. Stat. § 518.175, subd. 5, A.H. argues that the juvenile court erred by reducing her parenting time because this section requires a court to find endangerment before restricting parenting time. But under the juvenile-protection statutes, the juvenile court must consider the best interests of the child, not the parents' interests. "Best interests" include "all relevant factors to be considered and evaluated." Minn. Stat. § 260C.511(a). "In making a permanency disposition order . . ., the court must be governed by the best interests of the child, including a review of the relationship between the child and relatives and the child and other important persons with whom the child has resided or had significant contact." *Id.* at (b).

Here, the juvenile court conducted a thoughtful analysis of the child's best interests: (1) A.H. and Z.W. "did not seem to have the ability to control their behavior or to put the needs of the child first"; (2) A.H. and Z.W. continued to make an issue of what

10

the child calls himself and the legal guardians, despite being warned not to do so because it was stressful for the child; (3) A.H. "demonstrate[s] no willingness . . . to engage with the Legal Guardians, despite this Court's strong urging to do so"; (4) both A.H. and Z.W. "want to exert an ownership interest over this child" and "lack an understanding and fundamental acceptance of the fact that they transferred physical and legal custody of this child to the Legal Guardians"; (5) the legal guardians have attempted to follow the suggestions of a psychologist "but with little success due to the biological parents' unwillingness to communicate and cooperate about these issues"; and (6) "[t]he continued stress and adversity of the visits, the lack of consistency for the child, the challenge of the child for how he describes himself and others are all contrary to his best interests."

These findings are supported by the record, which contains three years of the visitation supervisor's notes, and are not clearly erroneous. *See D.F.*, 752 N.W.2d at 94 (stating, in a TPR proceeding, that appellate court reviews findings for clear error). The juvenile court's decision to reduce visitation to one three-hour visit per month was not an abuse of discretion.[5]

## DECISION

---

[5]A.H. also raises a claim of violation of her substantive due-process rights, arguing that the relationship between a parent and child is a fundamental right protected by the constitution. This fundamental right is based on a presumption that fit parents act in the best interests of their children. *Troxel v. Granville*, 530 U.S. 57, 68, 120 S. Ct. 2054, 2061 (2000). But A.H. and Z.W. voluntarily agreed to place A.W. in the permanent legal and physical custody of the legal guardians, and by doing so, gave up basic rights to make childrearing decisions. *See In re Welfare of the Child of P.T.*, 657 N.W.2d 577, 588 (Minn. App. 2003), *review denied* (Minn. Apr. 15, 2003).

When it has specifically retained jurisdiction, the juvenile court has exclusive and original jurisdiction over visitation issues in a post-permanency proceeding. The juvenile court uses the best-interests standard of Minn. Stat. § 260C.511, which includes all relevant factors, not the endangerment standard of Minn. Stat. § 518.175, when addressing visitation. The juvenile court did not abuse its discretion by limiting A.H.'s visitation time to three hours per month.

**Affirmed.**