*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0282**

In the Matter of the Welfare of the Children of:
A. M. C., T. D. R., and A. J. J., Jr.,
Parents

**Filed August 22, 2016
Affirmed
Ross, Judge**

Wright County District Court
File Nos. 86-JV-14-6140, 86-JV-14-2243

Erin E. Westbrook, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Minnesota
(for appellant-intervenor)

Cathleen Gabriel, Annandale, Minnesota (for mother)

Thomas N. Kelly, Wright County Attorney, John A. Bowen, Assistant County Attorney,
Buffalo, Minnesota (for respondent County)

Sara Nelson, Monticello, Minnesota (guardian ad litem)

Considered and decided by Worke, Presiding Judge; Ross, Judge; and Connolly,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Wright County petitioned to terminate A.M.C.'s parental rights to her three children

and to terminate the parental rights of the children's fathers. The paternal grandmother of

two of the children intervened and requested the court to transfer physical and legal custody

of all three children to her. The district court rejected the request, finding that the grandmother was not adequately aware of the children's specific needs and serious mental-health issues, failed to show that she could ensure they would receive appropriate services, and would not prevent the father of two of the children from having contact with them. The grandmother argues on appeal that the district court improperly found several facts, adopted the county's proposed fact-findings verbatim, made errant best-interests findings, and failed to consider the familial relationship between herself and the children. Based on our deferential standard of review of district court decisions in child-protection matters, we affirm.

## FACTS

In November 2014, Wright County petitioned to terminate Mother A.M.C.'s parental rights to her three children: five-year-old M.C., four-year-old P.J., and two-year-old J.C. The county also petitioned to terminate the rights of A.J. (who is P.J. and J.C.'s father), and the rights of M.C.'s father.

M.B. is A.J.'s mother and P.J. and J.C.'s grandmother. M.B. intervened in the termination proceedings to petition for transfer of legal and physical custody of all three children to her. The county originally placed P.J. and J.C. with M.B. after they were removed from A.M.C.'s care, and M.C. was placed with M.B. for a short time after problems developed with her previous placement. Wright County later removed all three children from M.B.'s care and transferred them to a nonrelative foster family.

A.M.C. and A.J. voluntarily consented to the termination of their parental rights for good cause, and the district court terminated M.C.'s father's rights by default. The remaining substantive question for trial was M.B.'s petition for the transfer of rights to her.

The district court conducted a trial and heard favorable testimony about M.B.'s parenting ability from Hennepin County child-protection workers, family friends, P.J.'s preschool teacher, the guardian ad litem for other relative children who had been placed in M.B.'s care, and an Urban Ventures worker who instructed M.B. in parenting classes. M.B. also testified in support of her petition.

The county called multiple witnesses, including a Wright County child-protection worker, a Hennepin County social worker who licenses foster parents, the children's therapist, and the children's Wright County case worker. The guardian ad litem also testified to her concerns about M.B.'s ability to parent the children and gave her opinion that the children need more care than most children.

The district court asked the parties to submit proposed findings of fact, conclusions of law, and orders for judgment. The district court adopted the county's proposed fact-findings and conclusions of law making only minor changes, but it also attached an appendix that appears to be the district court's own description of facts from the evidentiary hearing. In other words, the district court's fact-findings appear to be a cut-and-paste of Wright County's proposed findings with occasional references to the appendix of the court's description of the hearing evidence.

The adopted fact-findings say that M.B. is not fully aware of the specific needs of the children and their serious mental-health issues and that she did not show that she could

3

provide them with appropriate services. They also state that M.B. has three adult sons with significant criminal histories and express concern that these adults, especially A.J. (the father of the two younger children), will have contact with the children. The district court stated that it considered the relationship between the children and grandmother but concluded, "[I]t is more important to have the children placed in a home that can meet their complex needs."

The district court concluded that M.B. has not shown that the children should be permanently placed with her, and it denied her petition. She appeals.

## D E C I S I O N

Grandmother M.B. asks us to reverse the district court's denial of her petition to transfer custody to her, arguing that the district court clearly erred in making several fact-findings and adopting the county's proposed fact-findings verbatim, abused its discretion in determining that it was not in the children's best interests to transfer custody to her, and committed reversible error by failing to consider the children and M.B.'s familial relationship.

Once a district court terminates the biological parents' parental rights, it must order guardianship to the commissioner of human services, a licensed child-placing agency, or an individual who is capable and willing of assuming duties and responsibilities to the child. Minn. Stat. § 260C.325, subd. 1(a) (2014). The district court may transfer physical and legal custody to a "fit and willing relative in the best interests of the child" if certain requirements are met. Minn. Stat. § 260C.515, subd. 4 (2014). The best interests of the

child govern the district court's permanency determination, including consideration of the child's relationship with relatives. Minn. Stat. § 260C.511(b) (Supp. 2015).

M.B. expresses considerable frustration with Wright County's handling of certain aspects of the case. Her concerns have support in the record. For example, a Hennepin County child-protection social worker and an Urban Ventures worker explained their relationship with the family and testified that the assigned Wright County case worker simply would not return their phone calls. The case worker finally returned the Urban Ventures worker's call only after she contacted the case worker's supervisor. And the case worker never returned the Hennepin County child-protection worker's call even after she called the supervisor. The Hennepin County child-protection worker explained, reasonably (and according to the district court, credibly), that social workers in the community regularly communicate responsively when different jurisdictions are involved with a family, and that this did not occur here. The record also indicates that the Wright County case worker did not seem to get along well with M.B.

But despite M.B.'s concerns about the handling of her case and what appears to be her substantial effort and interest in securing custody of the children, we approach this close case deferentially, giving due weight to the district court's assessment. The statute affords the district court with broad discretion in deciding child-protection matters. *In re Welfare of Child of S.S.W.*, 767 N.W.2d 723, 733 (Minn. App. 2009). This is because the district court is in such a better position to weigh the evidence and determine the credibility of witnesses that we will not reweigh the evidence or disturb the district court's credibility determinations. *See In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992). On this

5

standard, we do not ask whether we would have decided the case differently were we in the district court's position, but only whether the district court has acted within its broad discretion. This is so even in the rare occurrence presented here, where child-protection workers from different counties familiar with the family offer competing testimony about the caregiver's placement suitability.

**I**

M.B. argues first that the district court erred by adopting verbatim the county's proposed fact-findings and legal conclusions. Reviewing courts have a strong preference for the district court to develop its own findings independently, rather than to simply cut and paste a party's proposed findings; but no blanket prohibition exists on this disfavored practice. *In re Children of T.A.A.*, 702 N.W.2d 703, 707 n.2 (Minn. 2005). Verbatim adoptions of one party's findings tend to make it difficult on appeal to tell whether the district court really used its own judgment and applied its independent consideration. *Dukes v. State*, 621 N.W.2d 246, 258 (Minn. 2001). And especially when substantial and credible competing evidence has been presented, a party who receives a wholesale presentation of the other side's proposed findings as the court's own findings may question whether the evidence favoring her position has been fairly treated.

Although the district court in this case adopted the county's lengthy proposed findings with few substantive changes, it also attached and referenced throughout its findings its independent and detailed description of the evidence. This demonstrates that it exercised its own discretion in receiving and assessing the testimonial and documentary evidence. We therefore will not reverse despite the mostly verbatim recitation of facts.

M.B. also maintains that several fact-findings, in both the adopted findings and the appendix, are clearly erroneous. We will deem a district court fact-finding clearly erroneous only if they are manifestly contrary to the weight of evidence or not reasonably supported by the record. *In re Children of T.R.*, 750 N.W.2d 656, 660–61 (Minn. 2008).

M.B. challenges the findings regarding her ability to care for the children. The first of these findings states that she did not carry her burden of establishing that she could care for the three children who have "serious emotional and behavioral needs" in addition to the care she already must provide to her teenage daughter and a young niece. The next of these findings is that M.B. did not show that she was aware of "the children's specific emotional, behavioral, educational, and developmental needs" and could not provide them with the services or environment they require.

M.B. is correct that the evidence supporting these findings is not abundant. But on appeal we look only to see if the findings have some support in the record, and they do. The district court credited the children's case worker's testimony that while all three children were placed with M.B. for about two weeks a "state of chaos" recurred. The district court also credited the guardian ad litem's concern that M.B. minimized the children's actual needs, as reflected in M.B.'s comment that the children had some needs but were "just kids." It also credited the guardian ad litem's opinion that M.B. generally denied the children had special needs. Although the district court found many of M.B.'s witnesses credible, it gave little weight to their testimony because they did not testify that M.B. could handle the children's special needs. We are mindful that the identified unique needs are not as obviously weighty and extraordinary as we have seen in some cases. But

7

the degree to which a child's special needs ought to bear on a placement decision depends on a range of facts and on the weighing of evidence. And again, the district court is in the best position to weigh the evidence. *See R.T.B.*, 492 N.W.2d at 4.

We next address M.B.'s challenge to the findings about the children's exposure to the parents, whose parental rights have been terminated for cause. One finding indicates the court's concern that A.J. will have contact with P.J. and J.C. if M.B. becomes custodian. Another finding states that these children particularly need a stable, structured, and consistent environment and that M.B. failed to prove that she was able or willing to keep her adult children out of her home. M.B. argues that the district court failed to acknowledge her testimony that she would prevent the parents from having any contact with the children. But the district court found M.B.'s testimony incredible, and we must defer to that judgment. M.B. contends that the finding is insufficient regardless of her credibility, pointing out that none of the child-protection workers who randomly visited ever said they saw A.J. there. But this lack of evidence of A.J.'s presence does not necessarily call into question the district court's finding that M.B. is not committed to preventing A.J. from contact with the children. The district court heard testimony that M.B. has stated that A.J. may come to her home when he is not incarcerated. A Wright County employee testified that when she called M.B.'s home in July 2014 looking for contact information for A.J., M.B. said that she believed A.J. was there and asked if the employee wanted to speak with him. Again, the evidence is not overwhelming, but based on testimony credited by the district court, we believe it was permitted to infer that M.B. is not inclined to prevent P.J. and J.C. from contact with their father.

8

The district court clearly erred in one of its findings. M.B. argues convincingly that the district court confused one of her sons who has a criminal record, L.C., with her youngest son, who does not. Several witnesses testified about her youngest son and his girlfriend living with her briefly after officials condemned their apartment building. The district court apparently confused L.C. with this son. But this error does not cause us to reverse because the district court was permitted to consider the residence of a third son, who does have a criminal record. Evidence supports a finding that this son lived with M.B. in 2014. A Hennepin County foster-care licensor testified that M.B. told her in early May 2014 that a son who had just returned from jail was living with her. M.B. told her that the son would move out that day so she could obtain a license, but the licensor testified that when she checked back a week later the son was still there. It is true that the period of his residence may have been before M.C., P.J., and J.C. resided with M.B.; as the district court observed, "[T]he evidence of who was living in the residence . . . during what period of time is extremely confusing." But the district court had ample ground to conclude that the various sons' need for housing was recurring, and it could make its own judgments contrasting the degree to which M.B. is inclined to house her sons and the degree to which she is inclined to protect the children from contact with them. Given the mostly undisputed findings of concern about exposing these children to the adults with criminal histories and the evidence that supports the district court's finding that M.B. is not committed to keeping the wayward adults separated from the children, we leave the findings undisturbed.

9

## II

We also leave undisturbed the district court's determination that the children's best interests do not support transferring custody to M.B. We review the district court's assessment of the best-interests factors for abuse of discretion. *In re Welfare of Child of A.H.*, 879 N.W.2d 1, 7 (Minn. App. 2016). M.B. argues broadly that the district court failed to consider "all relevant factors," particularly by giving "little weight" to several of M.B.'s witnesses. But the weight given to testimony is "ultimately the province of the fact-finder." *In re Welfare of Children of D.F.*, 752 N.W.2d 88, 96 (Minn. App. 2008) (quotation omitted). She argues specifically that the district court abused its discretion by not considering some statutory factors, particularly the children's religious and cultural needs, the children's community connections, and the children's interests and talents. Minn. Stat. § 260C.212, subd. 2(b)(6)–(8) (Supp. 2015). Our review of the record informs us that the district court followed the statute's directive to consider these factors. The statute does not direct what weight it must give them. The district court determined that it had little evidence about the children's cultural, medical, or religious needs, their interests and talents, or connection with a community or faith community. M.B. maintains that this finding is flawed because it ignores her testimony. But the district court acknowledged that M.B. introduced some evidence on the children's cultural needs; it reasoned only that she failed to demonstrate how these needs would be met by transferring custody to her. The district court accurately recognized that the record offers little evidence on these issues. We therefore do not believe that the district court's best-interests determination was erroneously conclusory or that it reflects any abuse of discretion.

10

## III

We are not persuaded by M.B.'s argument that the district court erred by failing to consider her familial relationship with the children. The district court must determine the child's needs and how the selected placement will serve those needs to ensure that the child's best interests are met. Minn. Stat. § 260C.212, subd. 2(a) (Supp. 2015). In doing so, it should first consider individuals related to the children by "blood, marriage, or adoption" and second individuals with whom the child has resided or had significant contact. *Id.*, subd. 2(a)(1)–(2). The best interests of the child in a permanency disposition must include review of the relationship between the child and relatives. Minn. Stat. § 260C.511(b).

M.B. cites *In re Welfare of M.M.*, 452 N.W.2d 236, 238 (Minn. 1990), and argues that there remains a "strong preference" for placement with a relative. But the argument overlooks changes in the statute. The supreme court in *M.M.* applied the statutory scheme in place in 1988, which directed that a relative was the placement preference except for good cause. *See* Minn. Stat. § 260.181, subd. 3 (1988). M.B. recognizes only that courts have observed that this statutory relative-placement preference has changed and perhaps decreased over time. *Cf. In re S.G.*, 828 N.W.2d 118, 124 & n.6 (Minn. 2013) (discussing the relative-placement preference in the adoption context). But we see no relative preference in the current statute at all. The current statute does not include any directive that children be primarily placed with relatives unless a detriment to the child is shown. *See* Minn. Stat. § 260C.212, subd. 2 (Supp. 2015). It is true that the statute still directs the district court to "consider" placing the children with relatives, *id.*, subd. 2(a), but this

11

consideration is but one factor in determining the ultimate interests of the child. *Id.*, subd. 2(b). And the statute does not suggest that this consideration should be afforded any more weight than any other factors. The current statute therefore reflects that familial placement is not a presumption but one factor among others that the court should consider when determining the child's needs.

The district court's fact-findings reflect that it considered the relationship between grandmother and children, stating that although the children have a relationship with M.B., "[I]t is more important to have the children placed in a home that can meet their complex needs." True, the district court did not specify that it was considering a "*familial*" relationship, but the context assures us that the district court considered the relationship's familial nature.

**Affirmed.**